(No. 13625.—Reversed and remanded.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* LAKE TEMPLE, Plaintiff in Error.

*Opinion filed December 21, 1920.*

1. CRIMINAL LAW—*when motion for separate trial is properly denied.* It is not error to deny a motion for a separate trial based upon the ground that affiant's co-defendant has confessed, where the affidavit accompanying the motion does not show that the confession includes the affiant or that any particular conduct is anticipated at the trial which will prejudice affiant's rights.

2. SAME—*when confession involving co-defendant is incompetent.* Evidence of a confession by one of the defendants in a criminal case is not competent where the statement testified to implicates a co-defendant who was not present when the confession was made.

3. SAME—*evidence that accused had previously pleaded guilty to different offense is not competent.* In a trial for burglary and larceny, oral evidence that the defendant when before the police magistrate pleaded guilty to having in his possession stolen property, which was the charge on which he was arrested, is not competent.

4. SAME—*when instruction that possession of stolen property is prima facie evidence of guilt of larceny is not applicable.* In a trial for burglary and larceny, an instruction to the effect that possession of stolen property soon after a theft is committed is *prima facie* evidence of guilt of the larceny does not apply where there is no evidence that the property was found in the possession of the defendant, the only legitimate evidence as to possession being that he knew where the property was.

5. SAME—*when defendant is entitled to instruction as to credibility of co-defendant who has made confession.* Where a verdict of guilty against one defendant must rest entirely upon the testimony of a co-defendant who has made a confession but nevertheless pleads not guilty, and who is offered as a witness ostensibly for the defense but in fact for the prosecution, the defendant whom his testimony implicates has a right to have the jury informed that they should take into account the fact, if proved, that such co-defendant became a witness under a promise or hope of immunity or leniency if he should testify as he did.

6. SAME—*the statute with reference to probation does not apply after sentence.* The statute permitting the court to commit the defendant to the custody of the probation officer does not apply after sentence to a penal institution, but the power of the court must be exercised before sentence.

WRIT OF ERROR to the Circuit Court of Madison county; the Hon. J. F. GILLHAM, Judge, presiding.

B. J. O'NEIL, and GEERS & GEERS, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, JOSEPH P. STREUBER, State's Attorney, and JAMES B. SEARCY, for the People.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

Lake Temple, plaintiff in error, was indicted jointly with Gus Craig in the circuit court of Madison county for burglary of the shop and storeroom of the Bluff City Automobile Company, in Alton, and larceny therefrom of four automobile tires. By the verdict of the jury the defendants were found guilty, and the age of Gus Craig was found to be twenty years and the age of the plaintiff in error twenty-eight years. On June 25, 1920, plaintiff in error was sentenced to the penitentiary, and afterward, on June 29, 1920, Craig was sentenced to the State reformatory at Pontiac but was at once committed to the care of his father as custodian and probation officer.

Before the trial Lake Temple, plaintiff in error, moved the court to grant him a separate trial, setting forth by affidavit that Craig had confessed the commission of the crime, and his confession would be competent against him but would be detrimental and prejudicial to the rights and interests of plaintiff in error. The court denied the motion, and inasmuch as the affidavit did not show that a confession of Craig would include or involve the plaintiff in error in any way, and there was no statement in the affidavit or premonition otherwise as to what might, and in fact did, occur on the trial which would have necessitated a separate trial, the court did not err in denying the motion.

Four witnesses testified for the prosecution, one of them being president of the automobile company and three being

police officers.  None of these witnesses implicated Temple
in any way in the burglary and larceny except by recount-
ing what Craig had said and the fact that Temple went
with Craig and police officers when the tires were found.
The burglary was committed between nine and ten o'clock
in the evening of March 7, 1920, and the police found that
Carl Weinrich had pulled the defendant Craig in a Reo
automobile out of the alley back of the premises of the au-
tomobile company at about ten o'clock that night, the bat-
tery of Craig's car being dead so that he could not start
the car.  Craig was arrested on March 10 and taken to the
police station and questioned by the chief of police and
made a confession, and said there was an Italian at Wood
River who was implicated with him.  He agreed to get the
tires and started for that purpose in the custody of officers,
but instead of going to Wood River he took them to Sei-
bold's garage in Alton, where Temple was employed.  Craig
there spoke to Temple apart from the officers and they all
went into the basement to look for the tires.  Temple said
the tires were not there and they were not found.  Craig
then had a second conversation with Temple out of the
hearing of the police.  Being asked if Temple was the Ital-
ian he said he was, but Temple did not live at Wood River
and appears not to be an Italian.  Temple, Craig and two
policemen then took an automobile and Temple directed
them to the home of George Swigert, at Godfrey, and Mrs.
Swigert, George's mother, gave Temple the tires and he
handed them over to the police.  A complaint was sworn out
before a police magistrate, Pat Maguire, charging Temple
with receiving stolen property and he was taken before the
magistrate, where there was some sort of a hearing, but the
magistrate did not testify and there was no evidence what
was done beyond testimony as to what was said at the time.

At the trial the president of the automobile company tes-
tified that there had been a burglary committed and the au-
tomobile tires were missing and afterward found.  He was

295–30

then asked if Craig made a statement in the police court. The statement was in the absence of Temple and was objected to, but the State's attorney said that it only applied to Craig and the objection was overruled. The statement was not so limited, but the witness testified that Craig said he took the tires and how he came about to get them and how he was influenced to commit the crime, which applied only to the plaintiff in error and was incompetent. Evidence was admitted that when Temple was taken before the police magistrate he pleaded guilty to having in his possession stolen property, which was the charge on which he was arrested. Temple afterward denied that he pleaded guilty to the charge then made against him, but the evidence was incompetent because it was not the crime for which he was on trial. The prosecution then closed their case, and it is manifest that the evidence was clearly insufficient to support a verdict against Temple.

Temple then testified in his defense that he was twenty-six years old and had lived with his father and mother in Alton many years; that he had been in the army about one year; that on the night of March 7 he was at a dance in Upper Alton; that he went with George Swigert and Paul Brecht and arrived there at about 8:30 in Swigert's Hupmobile; that about 10:30 the boy at the door checking people in and out of the dance by pinning ribbons on them called him and told him Craig wanted him; that he went downstairs and found Craig there in a Reo automobile; that Craig wanted to sell him tires, and he told Craig that he did not want them and had no use for them; that Craig said he had a divorce case coming on the following Saturday and must have some money, and he then said he would ask Swigert, who might use them on his Hup; that he went back upstairs and Swigert went down with him; that Craig wanted $100 for the tires, but Swigert did not have that much and paid $50 and was to pay the balance afterward; that Swigert handed the money to him and he handed it to Craig

and Craig delivered the tires to Swigert, who put them in his car; that Craig went away and he and Swigert went up-stairs to the dance and remained there until 11:30, when they came down and drove to a restaurant in Alton; that they stayed at the restaurant about thirty minutes and then Swigert drove him home, and the next he heard of the tires was on March 10, when the policemen and Craig came to Seibold's and asked where the tires were; that he told them the tires were not there, and they went out to Godfrey to Swigert's home and Mrs. Swigert gave him the tires and he gave them to the officers; that before the police magistrate he was charged with having possession of stolen property and said that he was not guilty, but the magistrate said that he must be guilty if he went and got the tires, but he persisted he was not guilty and never pleaded guilty to any offense. Swigert and Brecht testified and confirmed the testimony of Temple as to the whereabouts of Temple during the evening and that he was only out of the dance hall a very short time, and Swigert testified to the purchase of the tires from Craig. Carl Weinrich testified that when he pulled Craig out of the alley no one was with him, and when he got Craig started Craig went in the direction of Upper Alton, where the dance was going on. Counsel for Temple then rested the case in his behalf.

Counsel for Craig then called him as a witness, and he testified that he met Temple on a street car coming from St. Louis two days before the burglary and said to Temple, "What are you doing now for automobile tires?" that Temple answered that he had none, and said, "Do you know where I can get some?" that Craig said, "Not at the present time," and Temple said, "Well, there is good money in it; I guess you know that." He testified that on the night of the burglary he ran into the alley and his machine went dead; that he called up a garage and Weinrich came and pulled him out; that he went to Upper Alton to the dance hall and called Temple out, and Temple asked if he knew

any place where he could get some tires, and Craig said that there was a place, and they drove down there, Craig riding in his machine and Temple in a Ford machine; that Temple pushed the door open with his hand and they got four tires and put them in Temple's machine and drove back to Seibold's and rolled them down into the cellar. Temple was recalled and in rebuttal of the evidence given by Craig denied everything Craig had testified to, either as to any conversation on the street car or any connection with the burglary.

The court gave at the instance of the prosecution the following instruction:

"The court instructs you that the possession of stolen property soon after the theft was committed is *prima facie* evidence that the property was stolen by the person in whose possession it was found. That fact of itself, if you believe from the evidence, beyond a reasonable doubt, it is a fact, in the absence of evidence rebutting the presumption of guilt arising therefrom, will authorize a conviction."

This instruction, relating to the possession of stolen property soon after a theft is committed, and advising the jury that such fact, in the absence of evidence rebutting the presumption of guilt arising therefrom, will authorize a conviction, had no application to the case, since there was no evidence whatever that the tires were found in the possession of Temple or that there was any such possession on his part at any time as would raise a presumption or authorize a conviction. The only legitimate evidence as to possession was that he knew where the tires were.

The court refused to give this instruction:

"The jury are instructed that if they believe from the evidence that the witness Gus Craig was induced to become a witness and testify in this case by any promise of immunity from punishment or by any hope held out to him by anyone that it would go easier with him in case he disclosed who his confederate was or in case he implicated

someone else in the crime, then the jury should take such facts into consideration in determining the weight which ought to be given to his testimony thus obtained and given under the influence of such promise or hope."

Temple had a right to have the jury informed that they should take into account the fact, if it was proved, that Craig became a witness under a promise or hope of immunity or that he would be dealt with more leniently if he should testify as he did. It needs no power of divination to comprehend the fact that there was some sort of understanding, expressed or implied, or a reasonable expectation, that Craig would be benefited by giving testimony which would convict Temple, which was the only purpose of his examination. He had confessed the commission of the crime and at no time denied it but had pleaded not guilty. Without his testimony there was nothing which would have formed a sufficient basis for the verdict of guilty. He was called ostensibly as a witness for the defense and gave the only legitimate evidence to prove Temple guilty. What followed is convincing of the existence of a previous understanding or an expectation of leniency, which was realized. Temple was sentenced to the penitentiary and four days afterward a sentence of Craig was pronounced, and he was immediately committed to the care of his father. Although the legality of the order committing Craig to the care of his father is not here involved, to avoid any inference that it was lawful it is proper to say that it was without authority of law. By the statute the court has authority to commit one found guilty to the custody of a probation officer before sentence and continue the cause for further proceedings in conformity with the statute, but after sentence to a penal institution the court has no right to stay the execution of the sentence except for a reasonable time to enable the defendant to obtain a review of the judgment by writ of error. Craig being offered as a witness ostensibly for the defense but in fact for the

prosecution, Temple was at least entitled to an instruction advising the jury concerning the weight to be given to his testimony in case he was really testifying to help himself, of which every rational person would be convinced.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*