(No. 20400.—

The People of the State of Illinois, Defendant in Error, *vs.* Fred Hrdlicka *et al.* Plaintiffs in Error.

*Opinion filed April 23, 1931—Rehearing denied June 3, 1931.*

212

JOHN F. CASHEN, JR., for plaintiffs in error.

OSCAR E. CARLSTROM, Attorney General, JOHN A. SWANSON, State's Attorney, J. J. NEIGER, and S. S. Du-HAMEL, (EDWARD E. WILSON, GRENVILLE BEARDSLEY, and CHARLES A. BELLOWS, of counsel,) for the People.

Per CURIAM: The defendants, Fred Hrdlicka, Edward Kotek and Edward Kerstein, were found guilty by a jury in the criminal court of Cook county upon an indictment which charged that during the canvass of the votes cast at a special election on November 5, 1929, in the twenty-seventh precinct of the thirty-fourth ward, they willfully and fraudulently changed and altered certain ballots and certain markings placed on the ballots by the electors.

The election was a judicial election of twenty judges of the superior court and two judges to fill vacancies in the circuit court. Edward Grysh, Edward J. Hrdlicka and George Krejsa were judges, Grysh being a Democrat and the other two Republicans. Frank Prochol and Leo Kawczsinski were clerks and Thomas Collins was the police officer assigned to the polling place. Kerstein was Republican precinct captain, Fred Hrdlicka Democratic precinct captain, and Kotek, who was thirty-seven years of age and had lived all his life in the precinct, went to the polling place at about 5:15 in the afternoon while the canvass was in progress and as he knew all the men who were in the place he was admitted. A short time later Edward J. Hrdlicka complained of not feeling well and asked Kotek to take his place as judge, which Kotek did. Edward J. Hrdlicka was absent until about 7:30.

Counsel for the plaintiffs in error argues that there is reasonable doubt, on the record, of their guilt. The evidence upon which the convictions rest consists of the original ballots, the testimony of an expert witness, Jay Fordyce Wood, who had followed the calling of an examiner of disputed documents for twenty years, during which he had

given great attention to the study of disputed handwriting, typewriting and other subjects connected with the investigation of the genuineness of disputed documents, and the testimony of Grysh that during the progress of the canvass he saw each of the plaintiffs in error making marks upon some of the judicial ballots. There is no question of the qualification of Wood as an expert. Photostatic copies of those ballots concerning which Wood testified are in the abstract. One hundred and seventy-five ballots were cast in the precinct. Wood was examined as to thirty of these ballots and gave his opinion as to twenty-five of them in regard to erasures and changes. Philip J. Finnegan and Daniel P. Trude were candidates on the Democratic ticket for the two vacancies in the circuit court to be filled, George A. Curran and Edgar A. Jonas were candidates on the Republican ticket for the same offices, and all four names appeared at the foot of the ballot in the columns of their respective parties, the Democratic column being at the left of the ballot and the Republican next to it. In a number of cases the alterations concerning which Wood testified are clear on the face of the photostatic copies, and it thus appears that in several instances a cross was erased from the square before Finnegan's name or Trude's name, or both of them, and a cross added by a different hand and pencil before the names of Curran and of Jonas, or one of them, on several ballots; that upon several straight Democratic ballots a different hand and pencil added crosses before the names of Curran and Jonas; that upon one ballot crosses were added by a different hand and pencil before the names of Curran and Jonas. In the election Finnegan was the opponent of Curran and Trude of Jonas. Other alterations which are apparent were the erasure of a cross in the Republican circle upon two ballots, the erasure of a cross in the Democratic circle upon one ballot and the erasure of a cross before the name of Denis Sullivan upon another ballot. Other alterations mentioned by Wood are

not so apparent. The alterations where Curran and Jonas were concerned are thus so numerous, even apart from change of hand and pencil, as to eliminate all but a very remote possibility of mere coincidence. As the alterations were in a number of cases made by a different hand and pencil it is proved beyond a doubt that there was a violation of the election laws by an alteration of ballots.

The poll closed at four o'clock. There were three tables, with tops four or five feet square, in the polling place. They were placed end to end and the ballots emptied upon the middle table. A proposition for the issue of bonds and other propositions were voted on at the election, and Grysh testified that the ballots on these propositions and the judicial ballots were separated by Kawczsinski, Prochol and himself. The bond ballots were first counted and he and Kawczsinski proceeded to count the ballots on the other propositions. At that time Kerstein was sitting at the west side of the south end of the tables and Fred Hrdlicka across from him on the east side of the tables. Between the two were piled probably a third of the judicial ballots, and as Grysh counted the proposition ballots he looked at Kerstein and Hrdlicka from time to time—from eight to ten times—and each time he looked at one of them he saw the movement of his hands making cross marks very rapidly. Grysh was at the other end of the table. Kerstein was making marks on the ballots. Grysh did nothing about it. Later the judicial ballots were all placed on the center table and Kotek stood in front of them and was calling off the candidates. Grysh looked up and saw Kotek marking ballots. He had a pencil in his hand and was marking a ballot for Joseph J. Sullivan. Grysh asked Kotek what he was doing. Kotek said that he was a lodge member of his. The count proceeded, and at its conclusion Grysh, as a judge of the election, joined in making the returns as if the ballots had been protected honestly and counted as cast. Grysh was indicted for making false returns and upon his arrest told

his story to an assistant State's attorney and was released upon his own recognizance.

Changes were certainly made in the ballots, and if Hrdlicka, Kerstein and Kotek marked the ballots as openly as Grysh's testimony indicates, the jury were justified in the inference that those present were cognizant of what was being done, or at least that Kerstein, Hrdlicka and Kotek felt little fear of criticism of their acts. All were subject to suspicion. Ballots were altered by some one or more of those present at the canvass. The requirements of the law for the protection of the ballots were not observed but the evidence indicates that access to them during the canvass was permitted to unauthorized persons who thus had the opportunity to alter them. The defendants had no authority to handle or to touch the ballots. The judges and clerks alone had such authority, and they had no right to permit the defendants to have access to the ballots. It is the duty of the judges and clerks to conduct the canvass, and they cannot delegate that duty, or any part of it, to other persons. The explanation of the use of pencils by the defendants Hrdlicka and Kerstein is, that when the judges and clerks started to tally the ballots the two precinct captains took sample ballots and marked them to keep a check against the count of the judges and clerks in order to make a report to the headquarters of their respective commissioners. Suspicion pointed to everybody present at the canvass. The testimony of Grysh fixed criminal acts of alteration of ballots upon the defendants and criminal omission of duty upon himself as a judge of election. The open manner in which the marking was done tended to show the criminal participation of all. They were therefore all interested in the subject matter of this suit and in discrediting Grysh as a witness—at least in so far as he testified to the manner of making the alterations. They were particularly interested if indictments were pending against them for their part in the canvass of these ballots, and where they were wit-

nesses in this case evidence of their relation to the canvass and of their indictment was competent to show their interest as witnesses.

Each of the defendants testified in denial of the acts charged to him by Grysh and in denial of any alteration of any ballot by him, and each testified that he did not see any such act by either of the other defendants. Each also proved a good reputation among his associates for honesty and integrity.

Edward J. Hrdlicka, judge of election, Prochol and Kawczsinski, clerks of election, Otto Kepnick and Charles Bizek, watchers at the election, and Thomas Collins, the police officer who was assigned to the polling place, all of whom were present during all of the canvass except Edward J. Hrdlicka and had the same opportunity to see what was done there as Grysh had, testified for the defendants that they did not see any of the acts which he charged against them. Upon cross-examination Prochol testified that he had been indicted for making false returns of this election. The defendants moved to strike this testimony but the court held it competent; and Kawczsinski was required, over objection, to answer upon cross-examination that he had been indicted for making false returns of this election. It is contended that the court erred in admitting this evidence. The fact of their indictment tended to show their interest, and the cross-examination was therefore proper as an element to be considered by the jury in determining the credit which should be accorded them as witnesses. Thus there were, in addition to the defendants, six witnesses who had the same opportunity as Grysh to observe what was done during the canvass, none of whom saw any of the acts which he charged to the defendants. Still, it cannot be said that the verdict was obviously against the weight of the evidence. Grysh may have been more worthy of belief than the defendants, and the fact that others who were there did not see the acts done does not

overcome the testimony of a credible witness who testifies that he saw them done. It is true, also, that all who were present at the canvass had an interest in the subject matter, and the interest of those who were under indictment was greater than that of the others.

The first instruction given at the request of the State's attorney was as follows:

"The court instructs the jury that if any person shall fraudulently change or alter the ballot of any elector shall be adjudged guilty of a felony. And if not a judge, poll-clerk or other officer of election shall be punished by imprisonment in the penitentiary for not less than one nor more than five years."

It is contended that it was erroneous to give this instruction because it was based on section 12 of article 6 of the City Election law while the indictment is under section 6 of article 6, and the defendants were therefore called on to meet a charge of the violation of a section other than that on which the indictment is based. Counsel is mistaken in his premise, for the indictment is no more based on section 6 than on section 12 and the act charged is equally a violation of each section. The indictment in each count charged that the defendants during the canvass of the votes knowingly, willfully, fraudulently and feloniously changed and altered certain ballots. Section 12 is particularly concerned with the changing or alteration of the ballot, and provides that if any person shall fraudulently change or alter the ballot of any elector, or substitute one ballot for another, or do any one of several acts calculated to deceive the elector and defraud him of his vote, he shall, upon conviction, be adjudged guilty of a felony, and shall, if a judge of election, poll-clerk or other officer of election, be imprisoned in the penitentiary for not less than two nor more than five years, but if not such judge, poll-clerk or other officer of election, shall be punished by imprisonment in the penitentiary for not less than one nor more than five years.

The subject of section 6 is stuffing the ballot-box, and that section provides in separate clauses that if any person other than a judge of election shall do certain acts in connection with placing ballots in the ballot-box, or if any judge of election shall do certain acts in connection with causing or permitting ballots to be placed in the ballot-box, every such person shall, upon conviction, be adjudged guilty of a felony and shall be punished by imprisonment in the penitentiary for not less than one nor more than five years. The following is one clause of this section: "or if any such judge of election or other officer or person shall fraudulently, during the canvass of ballots in any manner change, substitute or alter any ballot taken from the ballot-box then being canvassed or from any ballot-box which has not been canvassed," every such person is subject to the penalty prescribed for all violations of the section. No difference is made in the penalty whether the violator of the section is an election officer or another person and the same penalty is prescribed by each of the sections. The fraudulent alteration of the ballot of any elector is a criminal offense under either section. Section 6 applies only to an alteration during the canvass, but under section 12 the time of the alteration is immaterial. A fraudulent alteration of a ballot handed to an elector before it is placed in the ballot-box is prohibited as well as an alteration made during the canvass of the votes cast. It is the thing prohibited which is important and not which of the two sections the drawer of the indictment had in mind. The indictment is for the fraudulent alteration of the ballots during the canvass. Any fraudulent alteration of the ballot is prohibited by section 12, while section 6 prohibits only alterations during the canvass. Each section imposes the same penalty for its violation by a person not an officer of election. If the defendants have violated section 6 they have also by the same act violated section 12, and a verdict of guilty may be sustained even though the evidence shows that the violation of the

one section was also a violation of the other, though, of course, only one penalty may be imposed. It is immaterial whether the indictment be regarded as under section 6 or section 12. The evidence is limited by the allegations and under this indictment would be the same whichever section be considered. The instruction was correct.

It is contended that the court erred in refusing to give instruction No. 8 to the jury. It is as follows:

"The court instructs the jury, that evidence that a man has all his life maintained a good reputation for honesty and integrity, is not proof of innocence, when he is charged with crime, but it may be sufficient, under the circumstances, to raise a reasonable doubt of his guilt."

The court gave the following instruction to the jury at the request of the defendants:

"The court instructs the jury, that evidence of previous good general reputation is competent evidence in favor of a party accused, as tending to show that he would not be likely to commit the crime alleged against him upon which he is now on trial. And in this case, if the jury believe from the evidence that prior to the alleged crime, the defendant always bore a good general reputation for honesty and integrity among his acquaintances and in the neighborhood where he lived, that must be considered by the jury, with the other evidence in the case, in determining the question whether any witnesses who testified to facts tending to incriminate him has been mistaken or has testified falsely or truthfully; and if after a full, careful and dispassionate consideration of all the evidence in this case, including that bearing upon his previous good general reputation for honesty and integrity, the jury entertain a reasonable doubt of the guilt of the defendant then it is your duty as jurors, under the law, and the court so instructs you, to return a verdict finding the defendant not guilty."

The last quoted instruction states the law fairly and fully on the subject. Good reputation, if shown, must be consid-

ered along with all the other evidence in the case. It may sometimes be an innocent man's only means of repelling the presumption of guilt arising from circumstances shown against him, and as a matter of fact it may be sufficient, under some circumstances, to raise a reasonable doubt of guilt. That it may be sufficient for this purpose should not, however, be given, without qualification, to the jury as a rule of law. It is a question of fact for the jury whether it is so under the particular circumstances and evidence in each case, and its sufficiency is a question of fact for the determination of the jury, who are the sole judges of the weight of the evidence and the credibility of the testimony. The refused instruction was not complete as applied to the facts. The subject sought to be covered by it was contained in the given instruction quoted last above. It was not error to refuse to give the instruction complained of.

It is next contended that the court erred in refusing to give instruction No. 14 asked by defendants in error, as follows:

"The court instructs the jury that the testimony of an accomplice should be weighed with great caution and the jury may disbelieve such testimony altogether if they believe it untrue, the jury being the sole judges of the credibility of the witnesses."

This instruction was applicable and should have been given if Grysh was an accomplice. His testimony was that he did not participate in the alteration of the ballots but that he as a judge of election saw what the defendants did, said nothing, and certified to the returns as being true and correct when he knew they were not. An accomplice is defined as one who knowingly, voluntarily and with common intent with the principal offender unites in the commission of a crime. (1 Wharton on Crim. Evidence,—10th ed.— sec. 440; Jones on Evidence,—2d ed.—sec. 768; *People* v. *Sapp,* 282 Ill. 51; *Hoyt* v. *People,* 140 id. 588.) The gen-

erally accepted test as to whether a witness is an accomplice is whether he himself could have been indicted for the offense, either as principal or accessory. If he could not then he is not an accomplice. The term "accomplice" cannot be used in a loose or popular sense so as to embrace one who has guilty knowledge or is morally delinquent or who was even an admitted participant in a related but distinct offense. To constitute one an accomplice he must take some part, perform some act or owe some duty to the person in danger that makes it incumbent on him to prevent the commission of the crime. (1 R. C. L. 157.) Sections 6 and 12 of the City Election law provide a penalty only against the person or persons actually changing or altering a ballot or ballots, and if the person so changing such ballot is a judge, clerk or officer of election he shall be punished by imprisonment not less than two and not more than five years, and if not such judge, clerk or officer of election, punishment is by imprisonment not less than one nor more than five years. Plaintiffs in error were of the latter class. The record shows that Grysh did not know of any design on the part of plaintiffs in error to change any ballot or ballots until he saw them doing so. He said nothing and made false return of the count of the ballots. The knowledge that a crime is being or is about to be committed cannot be said to constitute one an accomplice nor can the concealment of knowledge or the mere failure to inform the officers of the law when one has learned of the commission of a crime. (1 R. C. L. 157.) It cannot be said that Grysh aided, abetted or assisted in the commission of the crimes. They are affirmative in character. It is not sufficient that there is a mere negative acquiescence not in any way made known to the principal malefactor. (*White* v. *People,* 139 Ill. 143; *Lamb* v. *People,* 96 id. 73; *White* v. *People,* 81 id. 333.) From the foregoing it is clear that regardless of whether Grysh by making a false return, and thus concealing the crime, became an accessory

after the fact, he was not an accomplice, could not have been indicted with plaintiffs in error as a principal, and it was not error to refuse to give said instruction.

Plaintiffs in error insist it was error to permit the jury to take with them when they retired to consider their verdict all of the 175 ballots cast in the precinct when the testimony related to but a part of them. It was stipulated that all the ballots cast should be marked as People's exhibits, but many of them were not referred to in the trial. It was proper to permit the jury to take to their room the ballots before them on the trial and claimed to have been altered.

Defendant in error admits it was error to permit the ballots not before the jury on the trial to go to the jury room but contends the error was induced by plaintiffs in error and invited by them, therefore they can have no advantage by reason thereof. It is true, the record shows that in the argument of plaintiff in error's counsel to the jury he asked the jury to examine all the ballots, but when the matter came up before the trial court, out of the presence of the jury, plaintiffs in error objected to all the ballots going to the jury. It cannot be said that plaintiffs in error induced the court to commit this error.

The question then arises whether this error was sufficient to reverse the judgment. The ballots not claimed to have been altered were of no assistance to the jury and could not aid them in the determination of the guilt or innocence of plaintiffs in error, nor are they seen to be prejudicial to the interests of plaintiffs in error, and no such prejudice is pointed out. The evidence was conflicting. The jury were the sole judges of the credibility and weight to be given the testimony of the several witnesses. They found plaintiffs in error guilty of the crime as charged in the indictment. The evidence supports their verdict and no error appears requiring reversal of the judgment.

The judgment of the criminal court is affirmed.

*Judgment affirmed.*