THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* MICHAEL BERTUCCI, Defendant-Appellant.

First District (5th Division)   No. 78-1359

Opinion filed February 15, 1980.

Ralph Ruebner and Steven Clark, both of State Appellate Defender's Office, of Chicago, for appellant.

Bernard Carey, State's Attorney, of Chicago (Mark Komessar, Assistant State's Attorney, of counsel), for the People.

Mr. JUSTICE LORENZ delivered the opinion of the court:

Defendant was charged by information with the murder of Anthony Le Bar and following a jury trial was found guilty of voluntary manslaughter. (Ill. Rev. Stat. 1975, ch. 38, par. 9—2(b).) He was sentenced to a term of from 3 to 15 years imprisonment. The sole issue before us is whether the trial court erred in refusing to instruct the jury on the credibility of an alleged accomplice who received a grant of immunity from prosecution from the State.

The following pertinent evidence was adduced at trial.

*Robert Koznetzow*

In 1963 he was convicted of committing indecent liberties with a child and at the time of trial, faced a charge of obstruction of justice. He accompanied defendant in early May of 1976 to a Blue Island gun shop where defendant ordered a blue steel automatic handgun.

On May 18, 1976, at 12:30 a.m., he met the defendant who was driving a 1967 or 1968 Buick, and they drove in the defendant's car to Shag's tavern located in the 3400 block on South Wallace Street in Chicago. After parking the car in the tavern's parking lot, they began to walk to a lot north of the tavern. Both the lot and the tavern were owned by a Mr. Schillace. He told the defendant he left a bicycle chained to a tree near the Schillace garage on the lot and he wanted to check on it now.

Moments after he and defendant reached the lot, Robert Schillace, a

son of the tavern owner, and two other men arrived. Schillace had what looked like a sawed-off pool cue or stick in his hand, and one of the other men also held an object in his hands. When Schillace asked him if he was trying to break into the garage, he told Schillace that he was checking on his wife's bike. He further told Schillace that he had spoken to Schillace's father about the bike and that he believed one of Schillace's younger sons was responsible for the theft of parts of the bicycle. They decided everyone should return to the tavern where this explanation could be verified. They began to walk back to the tavern. Defendant and the other two men walked in front of him and Schillace. As they approached the tavern, he heard gun shots coming from in front of him. Walking forward he saw Anthony Le Bar lying on the ground holding his stomach, but he did not see the defendant. He then walked back to the alley behind the tavern where he found defendant in the car. He asked the defendant what happened, and the defendant replied: "The man should never have grabbed me." They left together in the defendant's car.

At approximately 9 p.m. on May 18, he again talked with defendant who told him he was leaving for Michigan. Within the next hour he was arrested by the police and charged with the murder of Anthony Le Bar. The police took him to the station where he was interviewed by an assistant state's attorney and gave a signed statement concerning the shooting. A preliminary hearing was held in June, and the court entered a finding of no probable cause. Three months later, the State granted him immunity from prosecution in exchange for his testimony in this case.

On cross-examination, he stated that he did not tell the defendant about his wife's bicycle until they reached the tavern's parking lot. He did not have a gun that evening and was unaware that defendant was carrying a gun. Neither he nor defendant attempted to break into Schillace's garage. He saw Anthony Le Bar throw the defendant against the wall before he heard the gun shots. According to his signed statement, he didn't see a weapon in Le Bar's hands.

He stated that he was given immunity from prosecution in exchange for testifying in this case consistent with his signed statement. In addition, the State gave him $400 as a moving expense prior to trial. He denied having been promised immunity in exchange for his signed statement. But he admitted that at the preliminary hearing he testified that on May 19, 1976, an assistant state's attorney promised him immunity if he testified in this case.

*Robert Schillace*

His father is the owner of Shag's tavern. On the night of May 17, he was the bartender in Shag's tavern. At approximately 1 a.m. a neighbor entered the bar and told him that someone was breaking into his father's garage. He, Anthony Le Bar and Dale Lacy left the tavern to investigate.

He had a club in his hand, but Le Bar and Lacy were unarmed. As they approached, he saw Koznetzow and another man by the garage. The other man, who stood six feet one inches and weighed 220 pounds, was wearing Levi pants, a black leather jacket and sunglasses. He asked Koznetzow what he was doing, and Koznetzow answered that he was attempting to get his bike out of the garage. Koznetzow added that Mr. Schillace, the witness' father, could verify his story. He decided they should return to the tavern and check with his father. On their way back to the tavern, Le Bar and the other man walked in front of him and Koznetzow with Lacy following everyone. The other man walked past the tavern and he asked him where he was going. The other man said: "Call your brother Sam, he will verify it." Le Bar said to the other man: "You heard the man, didn't you?" Le Bar "went for the man" and then gunshots rang out. Le Bar fell to the ground. He told the other man, who had turned toward him, to be "cool" with that gun. At that moment a metal object, thrown by Lacy, flew over the other man's shoulder. The other man responded by firing the gun in Lacy's direction. He then ran to the tavern and called the police.

When the police arrived, he was taken to the station to view some photographs. He identified photographs of Koznetzow and defendant. However, he told the police he could not be sure that defendant was the person who shot Le Bar without seeing him in person.

On cross-examination, he admitted that at the preliminary hearing he did not testify about identifying the photograph of defendant nor did he identify defendant in the courtroom. On the night of May 18, he knew nothing of Koznetzow's bicycle or the alleged theft of its parts. It was at Le Bar's urging that they went out to the garage. Koznetzow was a frequent customer of Shag's tavern whom he knew on sight.

*Dale Lacy*

He has been convicted 13 times for burglary. On the night of May 18, 1976, he was shooting pool in Shag's tavern when a man came in and told Robert Schillace that someone was breaking into the Schillace garage. He, Robert Schillace and Anthony Le Bar went out to the garage. Robert alone was carrying a club. When they reached the garage, he saw Koznetzow standing by the door, and another man next to Koznetzow. The other man was approximately six feet two inches tall, weighed over 200 pounds and was wearing Levi pants, a jacket and sunglasses. Robert had a brief discussion with Koznetzow, and then decided everyone should return to the tavern. Le Bar and the other man walked in front, followed by Robert, Koznetzow and him. He picked up an iron bar from the ground on the way to the tavern. When they reached the tavern, the other man said, "Go make the telephone call," and added that he didn't

have time to wait. Le Bar reached for the man, he heard gun shots. As Le Bar fell to the ground, he threw the iron bar at the other man and then ran.

*Charles Parillo, Chicago Police Officer*

At approximately 1 a.m. on May 18, 1976, he and his partner, Officer Camalre, were called to Shag's tavern. Upon arriving he saw a victim of a gunshot lying in the alley behind the tavern. In the course of his investigation, he examined the service door of a garage located on a lot north of the tavern and found the lock hasp had been forced off the door. Wood chips from the door frame, several screws from the door frame, and a screwdriver were found on the ground.

*William Scanlon, Chicago Police Officer—Crime Lab*

On May 18, 1976, he investigated a shooting at 3415 South Wallace where he found a .25-caliber bullet casing on the floor.

*Edward Kelly*

It was stipulated that if Edward Kelly was called he would testify that he is employed at the Blue Island Gun Shop, that on May 1, 1976, defendant came to the shop and ordered a blue steel .25-caliber Sterling automatic pistol and that defendant picked up the pistol three days later. The Firearms Transaction Record for this purchase indicated that defendant was five feet 11 inches tall and weighed 210 pounds.

*Donald Gunnell, Technician—Chicago Police Department, Firearms Section, Criminalistics Division*

It was stipulated that if Donald Gunnell were called he would testify that he examined the .25-caliber bullet casing found behind Shag's tavern by Officer Scanlon and the bullet recovered from the body of Anthony Le Bar. The bullet was a .25-caliber automatic bullet and was shot from a .25-caliber handgun. There are 70 manufacturers of .25-caliber handguns with ballistic characteristics matching those found on this bullet. A Sterling automatic .25-caliber handgun is one of those 70.

OPINION

Defendant maintains that the trial court should have given the jury a cautionary instruction on the credibility of the State's witness, Robert Koznetzow. In support of his position, defendant contends Koznetzow was an accomplice to the defendant in the murder of Le Bar and that Koznetzow testified under a grant of immunity. According to the defendant, both of these facts warrant a cautionary instruction on the credibility of this witness. The rationale requiring a cautionary instruction on the credibility of an accomplice is that the accomplice may manufacture testimony favorable to the State in the hope of obtaining lenient treatment from the State. (*People v. Jackson* (1977), 49 Ill. App. 3d 1018, 364 N.E.2d 975; see Illinois Pattern Jury Instructions, Criminal,

No. 3.17 (1968) (hereinafter IPI).) Similarly, a witness testifying under a grant of immunity from the State is likely to provide any testimony sufficient to insure his freedom. *People v. Rees* (1915), 268 Ill. 585, 109 N.E. 473.

During the conference on jury instructions, defendant tendered the following non-IPI instruction:

> "The testimony of an informer who provides evidence against a defendant for immunity from punishment or for personal advantage or vindication, must be examined and weighed by the jury with greater care than the testimony of an ordinary witness. The jury must determine whether the informer's testimony has been affected by his interest or prejudice against defendant."

An alternative instruction, also tendered by the defendant, substituted the word "accomplice" for the word "informer" in the above instruction. The trial court refused to give either instruction, stating:

> "In denying the Defense's request for Defense Instruction number two [including both alternatives] about the testimony of an informer or accomplice, my reasons for denying the Defense's request for the instruction is, I wish to point out that the witness's testimony was that he was in the police station. He gave a statement. He was charged with murder. And there was a finding of no probable cause. And he then was given immunity from prosecution and testified substantially the same as his statement in the police station, which the evidence shows. So, he isn't truly an accomplice. And I don't think that the instruction, as submitted, would apply in this particular case. And I believe that the opportunity for the Defense to argue it was amply exercised * * *."

We must first decide whether Koznetzow was an accomplice to the defendant in the murder of Le Bar warranting a cautionary instruction on the credibility of an accomplice.

■■ Where the testimony of an accomplice incriminates the defendant, a cautionary instruction on the reliability of this testimony is required. (*People v. Robinson* (1974), 59 Ill. 2d 184, 319 N.E.2d 772.) The definition of an accomplice was definitively stated by our supreme court in *People v. Hrdlicka* (1931), 344 Ill. 211, 176 N.E. 308. The court stated:

> "An accomplice is defined as one who knowingly, voluntarily and with common intent with the principal offender unites in the commission of a crime. [Citations.] The generally accepted test as to whether a witness is an accomplice is whether he himself could have been indicted for the offense, either as principal or accessory. If he could not then he is not an accomplice. The term 'accomplice' cannot be used in a loose or popular sense so as to embrace one who had guilty knowledge or is morally delinquent or who was

even an admitted participant in a related but distinct offense. To constitute one an accomplice he must take some part, perform some act or owe some duty to the person in danger that makes it incumbent on him to prevent the commission of the crime." (*Hrdlicka*, 344 Ill. 211, 221-22, 176 N.E. 308, 313.)

More recently, our supreme court stated the test for an accomplice as whether there is probable cause to believe the witness, in this case Koznetzow, was guilty either as a principal or on the theory of accountability of the offense. (*Robinson*, 59 Ill. 2d 184, 191, 319 N.E.2d 772, 776.) With these principles in mind, we turn to the facts of the present case.

Defendant was charged with the crime of murder and was found guilty of the lesser-included offense of voluntary manslaughter. At trial there was no evidence of common intent between defendant and Koznetzow, no evidence of a common plan, no evidence that Koznetzow had knowledge that defendant would kill Le Bar, and no evidence that Koznetzow united his efforts with defendant to commit this crime. The shooting of Le Bar was an independent, instantaneous, nonpremeditated act of defendant. Moreover, the charge of murder originally brought against Koznetzow as a principal was dismissed at the preliminary hearing for lack of probable cause.

■■ The doctrine of accountability, found in section 5—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1975, ch. 38, par. 5—2), provides in pertinent part that a person can be held accountable for the acts of another if:

"Either before or during the commission of an offense, and with the intent to promote or facilitate such commission, he solicits, aids, abets, agrees, or attempts to aid, such other person in the planning or commission of the offense." (Ill. Rev. Stat. 1975, ch. 38, par. 5—2(c).)

In this case there is no evidence of a common intent or plan to commit the offense, no evidence that Koznetzow did anything to assist in the planning of the offense, and no evidence that Koznetzow aided or attempted to aid defendant. Moreover, Koznetzow did not even know defendant was carrying a gun until the shooting occurred. We hold that there was no probable cause to believe that Koznetzow could be found guilty of the offense of murder either as a principal or under the theory of accountability. Since the witness cannot be considered an accomplice, defendant was not entitled to the requested cautionary instruction. *People v. Nowak* (1970), 45 Ill. 2d 158, 258 N.E.2d 313.

■■ Defendant, however, offers an alternative argument. He maintains that Koznetzow may be considered an accomplice because both he and Koznetzow could have been tried and found guilty under the felony murder doctrine. The underlying felony would be the burglary of

Schillace's garage. According to the defendant, the possibility that Koznetzow could be tried and convicted as an accomplice of defendant under a felony-murder theory provides Koznetzow with a reason to fabricate testimony against defendant. Thus, a cautionary instruction on the credibility of Koznetzow is necessary.

Defendant's argument cannot prevail because Koznetzow has been granted full immunity for his testimony in this case. Koznetzow need not shade or twist his testimony in the hope of receiving favorable treatment from the State because, unlike the typical accomplice situation, he has already received the most favorable treatment possible, a grant of immunity. Thus, defendant's hypothetical felony murder conviction does not require the cautionary instruction. Although the facts of this case do not warrant a cautionary instruction on the ground that Koznetzow may be classified as an accomplice, the grant of immunity itself may raise sufficient doubt about the witness' credibility to warrant a cautionary instruction.

Defendant maintains that the testimony of an immunized witness for the State, which implicates the defendant, requires the trial court, when requested, to give a cautionary instruction to the jury on the credibility of such a witness. We agree. Illinois courts have required this instruction in the past. (*People v. Temple* (1920), 295 Ill. 463, 129 N.E. 85; *People v. Rees* (1915), 268 Ill. 585, 109 N.E. 473; and *People v. Mostafa* (1971), 5 Ill. App. 3d 158, 274 N.E.2d 846; but see *People v. Swimley* (1978), 57 Ill. App. 3d 116, 372 N.E.2d 887, *cert. denied* (1978), 439 U.S. 911, 58 L. Ed. 2d 257, 99 S. Ct. 281.) The rationale behind this instruction is that the law recognizes the likelihood that the witness has spoken to the prosecution only to avoid prosecution and driven by this motivation would make any alteration of the facts necessary to obtain and preserve that immunity. Thus, the trial court's failure to give a cautionary instruction in this case was error.

■■ The State maintains, however, that the specific instruction tendered by the defendant was properly refused because it contained the word "informer." According to the State, the term "informer" has become a word of art in constitutional law with its own unique definition (see *Spinelli v. United States* (1969), 393 U.S. 410, 21 L. Ed. 2d 637, 89 S. Ct. 584; and *Aguilar v. Texas* (1964), 378 U.S. 108, 12 L. Ed. 2d 723, 84 S. Ct. 1509), and therefore could create confusion among the jurors. We believe that the number of jurors who are so well versed in the intricacies of constitutional law as to recognize the legal significance of the word "informer" is certainly limited. Nonetheless, the problem, if one exists at all, should have been solved by rewording the instruction, and not by refusing to give it.

Along these lines we note that the State's payment to Koznetzow of four hundred dollars as moving expenses was aptly covered by the general instruction on the interests and prejudices of witnesses. IPI Criminal No. 1.02.

■■ Finally, we must decide whether the trial court's error in refusing to give a cautionary instruction on the testimony of an immunized witness requires a new trial in this case. Failure to give an appropriate jury instruction requires reversal only where the defendant was so prejudiced by the failure to give the instruction as to affect the outcome of the verdict. (*People v. Taylor* (1979), 68 Ill. App. 3d 680, 386 N.E.2d 159; *People v. Kurzydlo* (1974), 23 Ill. App. 3d 791, 320 N.E.2d 80.) In the present case, defense counsel brought Koznetzow's immunized status to the attention of the jury repeatedly throughout the trial. During opening statements, defense counsel stated that Koznetzow would be the State's prime witness, and that Koznetzow would be testifying under the grant of immunity. In fact, defense counsel argued to the jury that Koznetzow's credibility was tainted by the grant of immunity. Next, during the cross-examination of Koznetzow defense counsel questioned him at some length about his deal for immunity. Finally, defense counsel repeatedly attacked the credibility of Koznetzow's testimony during closing argument. Certainly the jury was aware of Koznetzow's immunized status and was able to consider its effect on Koznetzow's credibility. A second factor to be considered is the prior statement made by Koznetzow after he was arrested. This statement, made during the time he was charged with the murder, is essentially consistent with his trial testimony. The consistency between the statement and Koznetzow's testimony offers additional credibility to the trial testimony. Furthermore, the jury received the general instruction on the credibility of witnesses, IPI Criminal No. 1.02, which instructed them to consider the "interest bias or prejudice" of each witness in determining the credibility of each witness. Under this instruction, the grant of immunity to Koznetzow was, in general, brought to the attention of the jury in their determination of the credibility of Koznetzow. Finally, there is the strength of the evidence against defendant. The testimony of Koznetzow, if believed, would be alone sufficient to find defendant guilty. There is, however, additional evidence. Defendant had recently purchased a .25-caliber Sterling automatic handgun. This type of weapon causes identifiable ballistic characteristics matching those found on the bullet which killed Le Bar. In addition, both Schillace and Lacy provided physical and clothing descriptions of the man who shot Le Bar which also fit the defendant. Schillace also made a tentative identification of the defendant from a photograph. Based on all of the above factors, we hold that the trial

court's failure to give a cautionary instruction on the credibility of an immunized witness did not so prejudice the defendant as to affect the verdict returned by the jury.

Accordingly, the judgment of the circuit court is affirmed.

Affirmed.

MEJDA and WILSON, JJ., concur.