(No. 36003.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* SAMUEL EDWARD MASON, Plaintiff in Error.

*Opinion filed September 27, 1963.*

DANIEL L. HUGHES, of Chicago, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and RICHARD T. BUCK, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE SOLFISBURG delivered the opinion of the court:

Defendant, Samuel Edward Mason, was tried in the criminal court of Cook County before a jury and on April 13, 1960, was found guilty of the illegal sale of narcotic drugs, and sentenced to the Illinois State Penitentiary for a term of not less than 10 nor more than 15 years. He prosecutes this writ of error to review his conviction.

The defendant contends that the trial court erred in restricting cross-examination of the State's witnesses. The trial court refused to permit defendant's counsel to cross-

examine with regard to the availability of the informer, and as to whether he would testify, and with regard to the suspension or dismissal of two of the State's witnesses by the Division of Narcotics Control. The defense was also denied the right to inquire whether two State's witnesses had been arrested, indicted and were in Federal custody on a criminal charge. The defendant further contends that the evidence produced at the trial was so unreasonable, improbable and unsatisfactory as to justify a reasonable doubt as to defendant's guilt and that a general verdict in the case was invalid where the original indictment charged three separate offenses of unlawful sale, unlawful possession and unlawful dispensing of narcotic drugs, and two of the charges were *nolle prossed* by the State after the jury retired.

The narcotics inspectors testified that at 4:00 P.M. on December 15, 1959, an informer brought the defendant to inspector Karl H. Henry, seated alone in a parked automobile at 39th and Ellis in Chicago. At the time inspector Henry was being "covered" by inspectors Thomas E. Manson and Samuel A. Patch, who were parked 20 yards away in an alleyway and parking lot. Inspector Henry testified that the defendant did not have any heroin then and they made an appointment to meet again at 9:00 P.M. at the same place. At 9:00 o'clock the defendant and the informer reappeared and inspector Henry purchased $15 worth of drugs with marked money and received three envelopes from the defendant. Inspectors Manson and Patch observed the defendant and another person approach inspector Henry's car, engage in a conversation and "observed a motion of the hands" between inspector Henry and defendant. Inspectors Henry and Manson then rendezvoused and field-tested the powder in the envelopes, which test indicated the powder to be narcotics. Inspector Henry and defendant also agreed to meet again at 3:30 in the morning. The inspector testified he returned to the same place at 3:30 A.M.

and was again alone in the car. At 4:00 A.M. defendant arrived. Inspector Henry gave defendant $20 of marked money. The defendant took the money and then entered the building on the southwest corner of 39th and Ellis where he worked and lived and 15 minutes later returned to the car with another person and handed inspector Henry four envelopes. This was also observed by inspectors Manson and Patch who testified to "another motion of hand." Inspector Henry testified that at this meeting the other man accompanying the defendant apparently recognized him as an agent and both defendant and his companion re-entered the building at 39th and Ellis. The three inspectors met several blocks away and returned to the area at 39th and Ellis. Inspectors Manson and Patch then arrested the defendant while walking in the area of 39th and Ellis. No narcotics and none of the marked money were found in a search of the defendant and his apartment. The informer was not produced and did not testify at the trial. The defendant did testify and denied making the sales.

It is clear that the State was not required to call the informer as a witness. (*People* v. *Aldridge*, 19 Ill.2d 176; *People* v. *Izzo*, 14 Ill.2d 203.) In the recent case of *People* v. *Durr*, 28 Ill.2d 308, this court dealt with the basic question of whether the State is compelled to disclose the identity of an informer in a criminal case. We are not here dealing with the question of disclosure of the informer's identity, for the name of the informer was given by the testifying officers and the court permitted cross-examination with regard to his race, description and address.

The only question to which the objection was sustained was whether or not the informer would testify. This question called for an answer the witness was not qualified to give and prejudicially inferred to the jury that the State was duty-bound to call the informer as a witness. Whether or not the failure to produce the informer raised a reasonable doubt as to defendant's guilt goes to the overall ques-

tion of the sufficiency of the evidence to prove the defendant's guilt beyond a reasonable doubt.

In cross-examination of the State's witnesses, Henry and Manson, defense counsel asked whether Henry was "recently suspended from the police force" and whether he was "a defendant in a criminal case recently". Similarly, the defense counsel asked Patch "Are you an inspector?" and also "What is your occupation?" Objections by the State to all of these questions were sustained by the court on the grounds that the questions were immaterial and exceeded the scope of direct examination. During argument in chambers it was admitted that Patch was then under indictment and had been suspended by the State Narcotic Bureau. It is not clear as to the employment status of the other inspectors. Defendant maintains that the questions asked were material to show bias or interest.

A distinction must be made between proof of conviction of an infamous crime for the purpose of impeaching credibility of a witness and the use of arrest or indictment as evidence of bias or interest on the part of the witness.

A witness may be impeached by attacking his character by proof of conviction of an infamous crime. (Ill. Rev. Stat. 1961, chap. 38, par. 734.) For this purpose only conviction may be proved, and proof of arrests, indictments, charges or actual commission of crime are not admissible. (*People* v. *Hoffman,* 399 Ill. 57; *People* v. *Newman,* 261 Ill. 11.) The rule prevailing in most jurisdictions and supported by the great weight of authority is that it is not permissible to show that a witness has been arrested, charged with a criminal offense, or confined in prison, or to inquire as to such fact upon cross-examination, where no conviction is shown, for the purpose of impairing his credibility. Anno. 20 A.L.R.2d 1421, 1425.

However, showing interest or bias on the part of a witness is also an accepted method of impeachment, and even in jurisdictions where evidence of arrest or indictment is

not ordinarily admissible to impeach credibility generally, the fact that a witness has been arrested or charged with a crime may be shown or inquired into where it would reasonably tend to show that his testimony might be influenced by interest, bias or a motive to testify falsely. Anno. 20 A.L.R. 2d 1421, 1440.

In *Alford* v. *United States*, 282 U.S. 687, 75 L. ed. 624, it was held that a witness for the government might properly be asked on cross-examination "Where do you live?", even though the purpose of the inquiry was to bring out the fact that he was in court in custody of Federal authorities. The question was held proper as bearing on the question of whether his testimony was biased because given under promise or expectation of immunity or under the coercive effect of his detention by such authorities. In holding that the defendant had the right to inquire into the matter of the witness's detention for the purpose of showing bias the Supreme Court stated: "The purpose obviously was not, as the trial court seemed to think, to discredit the witness by showing that he was charged with crime, but to show by such facts as proper cross-examination might develop, that his testimony was biased because given under promise or expectation of immunity, or under the coercive effect of his detention by officers of the United States, which was conducting the present prosecution. King v. United States, 50 C.C.A. 647, 112 Fed. 988, supra; Farkas v. United States (C.C.A. 6th) 2 F.(2d) 644, supra, and cases cited; People v. Becker, 210 N.Y. 274, 104 N.E. 396, supra; State v. Ritz, 65 Mont. 180, 211 Pac. 298, and cases cited on p. 188; Rex v. Watson, 32 How. St. Tr. 284. Nor is it material, as the court of appeals said, whether the witness was in custody because of his participation in the transactions for which petitioner was indicted. Even if the witness were charged with some other offense by the prosecuting authorities, petitioner was entitled to show by cross-examination that his testimony was affected by fear or favor grow-

ing out of his detention. See Farkas v. United States (C.C.A. 6th) 2 F. (2d) 644, supra; People v. Dillwood, 4 Cal. Unrep. 973, 39 Pac. 438."

The decision in the *Alford* case has been followed in *Spaeth* v. *United States,* (6th cir.) 232 F.2d 776; *Ford* v. *United States,* (5th cir.) 233 F.2d 56; and *Sandroff* v. *United States,* (6th cir.) 158 F.2d 623. In *United States* v. *Masino,* (2d cir.) 275 F.2d 129, the court held that it was improper to exclude evidence that the principal witness for the government in the prosecution for sale of narcotics had been arrested or indicted for previous narcotics offenses, where the disposition of the charge might show a motive for the witness to testify falsely. The distinction is quite clear in those cases which hold that the defendant has a right to examine the complaining witness with regard to the fact that the complainant had previously been arrested on a warrant issued on the complaint of the defendant. (*Richardson* v. *Commonwealth,* 201 Ky. 395, 257 S.W.8; *Yarbrough* v. *State,* 105 Ala. 43, 16 So. 758.) However, bias may be shown by circumstances other than a showing of ill will or bad feeling toward the defendant as a result of a prior complaint. As stated in 3 Wigmore, Evidence, sec. 967 (3d ed. 1962 supp., p. 186) : "Apart from accomplices and co-indictees, a witness in a criminal case, as well as in a civil case, may have a motive to testify falsely about a particular matter. No useful purpose would be served in undertaking to enumerate even some of the innumerable motives that may exist. Suffice it to say that evidence of such motive is to be distinguished from that which merely tends to discredit the witness generally."

In the present case we have not only the apparent arrest and indictment of one, if not two, of the State's witnesses, but also their suspension as narcotics investigators, in which very capacity they arrested the defendant and are now testifying against him. Since the informer did not testify, the inspectors were the sole witnesses to the alleged

sale of narcotics. Under these circumstances the defendant had a right to cross-examine to show whatever bias or prejudice the witnesses might have. The effect of such evidence in determining whether or not the witnesses were in fact biased or prejudiced would be for the consideration of the jury.

The scope of cross-examination is generally within the trial court's discretion. However, the widest latitude should generally be allowed the defendant in cross-examination for the purpose of establishing bias. (*People* v. *Naujokas*, 25 Ill.2d 32.) In the present case the trial court cut off all inquiry on subjects with respect to which the defense was entitled to a reasonable cross-examination. This was an abuse of discretion and prejudicial error.

In view of our holding on the question of cross-examination, it will not be necessary to determine the remaining points raised by the defendants as grounds for error. The alleged error with regard to the general verdict upon an indictment charging three separate offenses would not be likely to occur in a retrial of this case.

For the reasons stated the judgment of the criminal court of Cook County is reversed and the cause remanded to that court for further proceedings in accordance with this opinion.

*Reversed and remanded.*