THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
LELAND SNYDER, Defendant-Appellant.

Fourth District   No. 14953

Opinion filed May 23, 1979.

GREEN, J., specially concurring.

Richard J. Wilson and Diana N. Cherry, both of State Appellate Defender's Office, of Springfield, and Linda A. Weathers, law student, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Richard A. Current, Assistant State's Attorney, of counsel), for the People.

Mr. PRESIDING JUSTICE REARDON delivered the opinion of the court:

The defendant, Leland Snyder, was convicted of burglary, following a jury trial, and sentenced to imprisonment for 2 to 6 years. On appeal, defendant alleges that the trial court erred by restricting defense counsel's cross-examination of the State's principal witness and in denying his request for production of certain police reports.

Following oral argument, this court remanded this case for a hearing by the trial court to determine the relevancy of the police reports which the defendant had sought to have discovered. See *People v. Allen* (1970), 47 Ill. 2d 57, 60, 264 N.E.2d 184.

The facts of the case may be briefly summarized as follows. James Banfield testified that his home in Decatur, Illinois, was broken into sometime between 11:30 a.m. and 7 p.m. on October 25, 1977. A window in the northwest bedroom of his home had been broken and there were stains of blood on a back door curtain and the living room floor. According to Banfield, in addition to various small items, a vacuum cleaner and a record player had been taken from his house.

Vincent Sparks, who admitted being a participant in the burglary, testified for the State. Sparks acknowledged that he had been granted immunity concerning the burglary, but he claimed that no other promises had been made to him either by the State's Attorney's office or by the police. He testified that, on the day of the burglary, he went over to the defendant's trailer (which was behind Banfield's house) around noon or 1 o'clock. After a short conversation, he and the defendant went over to Banfield's house where the defendant stuck his fist through a window, cutting his hand or wrist as he did so. The defendant allegedly lifted Sparks through the broken window, and Sparks opened a door from the inside to let the defendant in.

According to Sparks, once inside he picked up a record player, and the defendant took a vacuum cleaner. After about 5 or 10 minutes, the two took the items they had collected to the defendant's trailer. Sparks claimed that he didn't see the goods after that.

A neighbor of Banfield's, Robert Daniels, testified that at about 1:25 p.m., on the day of the burglary, he saw an ambulance in front of the defendant's trailer. He witnessed the ambulance attendants leading the

defendant to a stretcher. While admitting that he was not close to the scene. Daniels stated that he saw "something white" on the defendant's arm, which he assumed was a bandage.

Patrolman James Parker interviewed the defendant three days after the burglary. He questioned the defendant about an injury to his right arm which was bandaged. The defendant told Parker that he had injured his arm in a fight, but he refused to reveal the name of the individual with whom he had fought, stating he did not want to get the man into trouble. Parker, however, did not attempt to ascertain whether any fights had been reported at the tavern where the incident allegedly occurred. Finally, although the police had taken certain items from the scene to be tested for blood samples or fingerprints, no testimony was offered regarding what, if any, tests were conducted concerning those items or the results thereof.

Paul Dyer and police officer Ed Combs testified for the defense. Dyer, the defendant's roommate, stated that, although having access to all parts of the trailer which the two shared, he had never seen any of the stolen items in the mobile home. Two days after the burglary, Officer Combs had searched the trailer and had found none of the goods purportedly taken from Banfield's home.

As we noted at the outset, the defendant contends on appeal that his conviction should be overturned because of the trial court's improper limitation of defense counsel's cross-examination of Sparks, and the denial of his request for discovery of the police reports. Defense counsel had attempted to question Sparks concerning an interview he had with police, wherein he allegedly admitted his involvement in three other crimes. The court sustained the State's objection to the defense's inquiring into this matter.

■■■ Defendant made an offer of proof which indicated that Sparks had admitted to the police his involvement in three or four other offenses. These admissions were made during the course of the police interrogation concerning the burglary of Banfield's home. However, Sparks denied that any promises or concessions had been extended to him with regard to these offenses. It is well established that a defendant "is entitled to have the trier of the fact informed as to any promises of leniency that may have been made to the witness, whether those promises related to the present offense or to other pending charges." (*People v. Norwood* (1973), 54 Ill. 2d 253, 257, 296 N.E.2d 852.) Nevertheless, in remanding this case we stated, and we adhere to the position that, where there is no showing that a witness has any expectation of leniency as to pending charges, cross-examination concerning such charges would not tend to show bias or interest. See *People v. Eddington* (1978), 64 Ill. App. 3d 650, 381 N.E.2d 835; *People v. Martin* (1978), 53 Ill. App. 3d 785, 376 N.E.2d 65.

The original record on appeal revealed that the jury was informed of the grant of immunity extended to Sparks, concerning the burglary with which the defendant was charged. In addition, both in the presence of the jury and during the offer of proof, Sparks denied that any other promises or concessions had been offered to him in exchange for his testimony. There was no demonstration from that evidence of any additional expectation of leniency.

The defendant also contended, however, that the police reports, which he was denied access to, might have indicated the granting of further concessions by the prosecution, or other relevant information which could have been used to impeach the witness. It was on that basis that we remanded this case for a hearing by the trial court to determine the relevancy of those reports. See Supreme Court Rule 412(a)(i) (58 Ill. 2d R. 412(a)(i)).

The trial court found that those reports contained no indication of any promises of leniency or other concessions by the police or the prosecution to Sparks. That finding is supported by the report of proceedings and supplemental record. The trial court reasoned that the police reports, containing the witness' admissions to these other offenses, were not relevant for purposes of demonstrating his interest or bias. In essence, the court concluded that the production of these reports would not have warranted extending or enlarging the scope of cross-examination it originally allowed. Having closely reviewed the additional record, we have no quarrel with that conclusion and, thus, we view the court's limitation of cross-examination as proper.

The defendant also contends that these other offenses would have been relevant as establishing a *modus operandi* or common scheme of criminal activity of young Sparks. However, proof of other offenses to establish a common design or scheme is admissible to prove the *modus operandi* of the accused, not of a witness generally. (*E.g., People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489.) The rationale for this rule is premised on basic notions of relevancy. The evidence of the defendant's other criminal acts may be probative of the issue of his guilt, to the extent they contain similar or identical characteristics with the offense for which the defendant is being tried. In the instant case, Sparks' guilt of the burglary for which the defendant was charged was not at issue. The probativeness of these admissions as they may negate the defendant's guilt is extremely attenuated. Further, the collateral nature of the theory underlying such an inquiry would serve only to confuse the true issues. We find no authority justifying the establishment of *modus operandi* of a prosecution witness.

Having decided that these police reports were not relevant, either to demonstrate Sparks' anticipation of gaining the State's favor or for some

other purpose, we necessarily conclude that no error resulted from their failure to be produced. Absent a showing of relevance, these reports failed to meet one of the prerequisites for disclosure of information or material held by the State. See *People v. Allen* (1970), 47 Ill. 2d 57, 60, 264 N.E.2d 814; Supreme Court Rule 412(a)(i), 58 Ill. 2d R. 412(a)(i).

Finally, the defendant maintains that the evidence was insufficient to establish his guilt beyond a reasonable doubt. The basis of the defendant's claim is that the only evidence implicating him was the testimony of his alleged accomplice, which was largely uncorroborated in aspects materially linking him to the crime.

■ Although testimony of an accomplice is competent evidence, it is subject to grave suspicion and scrutiny. (*People v. Norwood* (1973), 54 Ill. 2d 253, 256, 296 N.E.2d 852.) However, the testimony of an accomplice, even though uncorroborated and "subject to infirmities such as promises of leniency, may be sufficient," to establish guilt beyond a reasonable doubt. (*People v. Farnsley* (1973), 53 Ill. 2d 537, 544, 293 N.E.2d 600.) Further, where an accomplice's testimony is in part corroborated, such corroboration lends credence to the uncorroborated portions of the testimony. *People v. Pittman* (1973), 55 Ill. 2d 39, 57-58, 302 N.E.2d 7.

The record demonstrates that Sparks' testimony was corroborated in certain aspects. Sparks testified that the defendant cut his hand when he broke a window to gain entry to the house. The home owner, Banfield, stated that a bedroom window had been broken, and that he observed blood stains throughout the house. According to Sparks, he and the defendant met between 12 a.m. and 1 p.m. on the day of the burglary, and after a short conversation, they proceeded to Banfield's house. A neighbor, Daniels, saw the defendant at about 1:25 p.m. (which would have been only a short time after the burglary) being led to an ambulance, with what appeared to be a bandage on his arm. These facts tend to bolster the rest of Sparks' testimony.

■ The question concerning the sufficiency of the evidence is, thus, in this case essentially one of credibility. The credibility of witnesses and the weight to be accorded the evidence as a whole is for the trier of fact, not a court of review. (*People v. Stringer* (1972), 52 Ill. 2d 564, 568, 289 N.E.2d 631.) We cannot conclude that the jury's finding of guilt was so improbable or unreasonable as to raise a reasonable doubt of guilt. (*People v. Zuniga* (1973), 53 Ill. 2d 550, 293 N.E.2d 595.) Accordingly, we affirm the judgment of the circuit court.

Affirmed.

MILLS, J., concurs.

Mr. JUSTICE GREEN, concurring specially:

I concur in the result reached.

I agree that here, as in *Eddington*, the trial court did not commit reversible error in refusing to permit cross-examination of the accomplice Sparks concerning his admission of having committed other offenses. As he had admitted to receiving immunity for the instant offense, any further impeachment for bias would have been merely cumulative.

I do not agree that the defense does not generally have the right to cross-examine a prosecution witness about other offenses, the prosecution for which is as likely as here, even though it is not shown that the witness expects leniency. The mere incentive that the witness has to curry favor with the prosecution has probative value on the issue of bias. See *People v. Mason* (1963), 28 Ill. 2d 396, 192 N.E.2d 835; McCormick, Evidence §40, at 80 (2d ed. 1972).