THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
GALE SILER, Defendant-Appellant.

Fourth District   No. 15817

Opinion filed June 16, 1980.

Richard J. Wilson and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, for appellant.

Paul C. Komada, State's Attorney, of Charleston (Gary J. Anderson and Karen L. Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. PRESIDING JUSTICE MILLS delivered the opinion of the court:

This was the nightmare of any trial judge: A felony tried *pro se* before a jury.

A *circus*!

But properly tried, and we affirm.

Siler was convicted by a jury of burglary, aggravated battery, and battery. He was sentenced to four years' imprisonment for the burglary with no sentence being imposed on the other convictions.

But, first, let us look at the facts.

Defendant's trial commenced on March 27, 1979, with defendant appearing *pro se* after refusing appointed counsel. Prior to opening statements, defendant presented the trial court with an incomplete list of witnesses that he desired to call and asked the court to subpoena the witnesses and for a short continuance so that he could look their names up in the phone book. The trial court denied both requests.

The victim—Marsha Klimes—was a school teacher in Charleston, Illinois. On the evening of December 15, 1978, she left her apartment on her way to a faculty Christmas party. As she was entering her automobile, she was approached by the defendant, who had apparently mistaken her for someone else. After informing defendant of his error, Klimes attempted to enter her automobile, at which time defendant forced his way into the vehicle. When she began screaming, defendant put his hand over her mouth and lifted her dress. Klimes was able to open the passenger door and exit the vehicle as defendant was pulling on her hair.

Upon escaping, Klimes ran into the street and stopped a passing automobile. As she turned back towards her automobile, she observed defendant exiting the passenger side. She pointed defendant out to Benjamin Laxton, a passing motorist, and following a chase, Laxton subdued defendant. As Laxton was bringing defendant back to the automobile, he questioned defendant concerning the occurrence. Defendant responded, "Nothing was going on. I was just trying to talk to her. I didn't mean to hurt her."

During cross-examination, defendant attempted to ask Laxton on at least four occasions if Laxton was being held on pending drug charges in

Florida on a date after the occurrence. The State's objections to these questions were sustained. (The record on appeal indicates that there was a governor's warrant for Laxton from the State of Florida. On January 8, 1979, the trial court released Laxton on bond pending his testimony in this case. On April 12, 1979, the bond was dissolved.)

The State rested, and Siler presented the court with a list of 21 witnesses he wanted to call on his behalf and requested that he be given time to telephone or subpoena these individuals. This list included police officers, medical personnel, inmates of the Coles County jail, attorneys, the defendant's mother, and four individuals who defendant asserted could offer alibi testimony. Because the defendant had neither subpoenaed these individuals nor indicated to the State that he intended to rely on the defense of alibi, the trial court did not allow Siler to call any witnesses except those present in the courtroom.

Donald Jenkins, a Coles County deputy sheriff, testified that he had occasion to escort defendant to a local health center for the purpose of obtaining a back brace. On cross-examination, Jenkins noted that he had seen Siler walk normally on several occasions prior to the time defendant obtained the brace.

Siler testified on his own behalf and stated that he had been drinking in a tavern that was located near the parking lot where victim Klimes was attacked. At approximately 6:30 p.m., he fell ill as a result of his drinking and walked to his car. When he reached the car, he heard someone yell for help. He looked up but was unable to determine the origin of the screams. Still feeling the effects of his drinking, Siler entered his car and reclined in the front seat. A short time later, he heard someone running by his automobile and felt someone bump the car. Siler looked up and within moments someone grabbed him by the neck. Siler further stated that he hurt his back in an industrial accident in August of 1977. He stressed that his physical condition was such that he did not think he was capable of attacking or overcoming Klimes.

The jury found defendant guilty of burglary, aggravated battery and battery. The trial judge imposed sentence only upon the burglary conviction.

Five issues are now presented for our consideration. Defendant claims (1) it was error for the trial court to preclude him from questioning Laxton concerning the pending extradition warrant; (2) the trial court improperly prevented him from calling 20 witnesses; (3) it was error for the court to allow testimony concerning defendant's attempt to lift up Klimes' dress; and (4) the State failed to prove that defendant had the requisite intent for burglary. The State also requests that this cause be remanded to the trial court for imposition of a sentence on the aggravated battery charge.

## I

Defendant initially contends that he was denied a fair trial by the fact that the trial court restricted his right to cross-examine Laxton concerning possible bias or prejudice.

■■ The accused has a right to question a witness concerning any matter which goes to explain, modify or discredit what the witness said under direct examination and the fact that the witness has been arrested or charged with a crime may be shown or inquired into where it would reasonably tend to indicate that the witness' testimony might be influenced by interest, bias, or motive to testify falsely. (*People v. Barr* (1972), 51 Ill. 2d 50, 280 N.E.2d 708.) While the scope of cross-examination is generally within the discretion of the trial court, the widest latitude should generally be allowed the defendant in cross-examination for purposes of establishing bias. *People v. Naujokas* (1962), 25 Ill. 2d 32, 182 N.E.2d 700; *Barr.*

Siler points to the United States Supreme Court's decision in *Alford v. United States* (1931), 282 U.S. 687, 75 L. Ed. 624, 51 S. Ct. 218. In *Alford*, the defense counsel asked a witness his address. The purpose of the inquiry was to bring out that the witness was in custody of the Federal authorities. The Supreme Court held that the question was proper as bearing on whether the witness' testimony was biased because it was possibly given under a promise or expectation of immunity or under the coercive effect of his detention by such authorities.

Likewise, in this case it is asserted that the pending extradition warrant from Florida would establish Laxton's bias, prejudice, or motive to testify falsely. Defendant claims that the error is not harmless since Laxton's testimony was crucial to the State's case.

The State merely asserts that since Laxton testified in Coles County, Illinois, but the charges against him were in Florida, "surely Laxton had no expectation of leniency from the Coles County State's Attorney since the Coles County State's Attorney had no influence over the prosecution in Florida."

■■ ■ Our examination of this issue leads us to conclude that the State's Attorney had neither the power nor the authority to determine the outcome of the governor's warrant. Article IV, section 2, clause 2, of the United States Constitution provides:

> "A Person charged in any State with Treason, Felony, or other Crime, who shall flee from Justice, and be found in another State, shall on Demand of the executive Authority of the State from which he fled, be delivered up, to be removed to the State having Jurisdiction of the Crime."

Extradition is not a matter of mere comity, but an absolute right of the demanding State and the duty of the asylum State. *In re Russell* (1974), 12

Cal. 3d 229, 524 P.2d 1295, 115 Cal. Rptr. 511; see also Ill. Rev. Stat. 1979, ch. 60, par. 19.

Our decision is further bolstered by the fact that Laxton's testimony does not appear to be essential to the State's case. The victim clearly identified Siler. Laxton's testimony was merely corroborative of the events occurring *after* the offense. Since defendant admitted his presence on the scene, Laxton's testimony was not crucial to the conviction.

## II

Defendant asserts that he was denied a fair trial due to the fact that the trial court refused to continue the trial in order to compel 20 witnesses to testify in his behalf.

After the prosecution rested its case, defendant presented to the court a list of 21 witnesses he wanted to call in his behalf and requested that he be given time to telephone or subpoena these individuals. The court questioned defendant concerning the testimony each witness was expected to provide. Because the defendant had not subpoenaed any of these individuals nor indicated to the State that he intended to rely on the defense of alibi, the trial court did not allow defendant his continuance. The defendant now asserts that since he was incarcerated at all times prior to his trial and was restricted in his ability to notify his witnesses of the trial date, the ruling of the trial judge was incorrect and he should be afforded a new trial.

Defendant correctly argues that it is well established that a defendant's right to call witnesses on his behalf and present a defense is a fundamental constitutional guarantee. The right to call witnesses on one's own behalf is essential to due process. *Chambers v. Mississippi* (1973), 410 U.S. 284, 35 L. Ed. 2d 297, 93 S. Ct. 1038.

The basic question is, however, whether the trial court should have allowed defendant a continuance in order to compel the presence of the witnesses. The statutory rule governing the trial court's grant of a continuance is found in section 114—4 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1979, ch. 38, par. 114—4). That section provides:

> "(e) All motions for continuance are addressed to the discretion of the trial court and shall be considered in the light of the diligence shown on the part of the movant.
>
> (f) After trial has begun a reasonably brief continuance may be granted to either side in the interests of justice."

We do not conclude that the trial court abused its discretion in this case. Defendant indicated he was ready for trial when the case was called. He had known of the trial date at least 21 days in advance and had filed at least seven motions on his own. He had been in court on at

least six occasions prior to trial and never indicated that he wanted the witnesses subpoenaed. After questioning defendant concerning the expected testimony of each witness, it was clear that many of the witnesses were going to testify to matters extraneous to the trial (*i.e.*, that defendant had requested a lineup, that defendant was denied medical treatment in jail, and that an attorney who had represented defendant on a prior occasion was incompetent).

Siler also suggests that he should be given special consideration in this court because he was incarcerated and appeared *pro se*. We do not agree.

After finding that Siler was indigent, the court appointed counsel for him. Then, after admonitions from the court (which included the judge's recommendation against it), Siler insisted upon appearing *pro se*.

It appears from the record that the defendant was afforded every practical opportunity to prepare his defense. The trial judge did a commendable job in vanguarding defendant's rights. Judge Burke was not, however, required to shun his robes and assume an adversarial position. Our system of justice guarantees each person the right to effective assistance of counsel. Should a defendant choose to squander this right, he is permitted to do so. To each man the folly of his choice.

## III

■ Siler argues that it was error for the prosecutor to elicit from victim Klimes that he lifted up her dress. He claims that this evidence had no probative value and that it was highly prejudicial to place this sexual *innuendo* before the jury. The State argues that the issue has been waived by defendant's failure to either object to the testimony or to raise it in a post-trial motion.

We need not decide this question on waiver because the testimony was properly admitted and no error has occurred. Siler was charged and convicted of burglary. (Ill. Rev. Stat. 1979, ch. 38, par. 19—1.) This offense requires an unauthorized entry with the intent to commit a felony therein. The information asserted that Siler entered Klimes' automobile with the intent to commit an aggravated battery. More precisely, the intent was alleged to be the commission of a battery on a public way. (Ill. Rev. Stat. 1979, ch. 38, par. 12—4(b)(8).) A battery is committed when a person either intentionally or knowingly, and without legal justification, makes physical contact of an insulting or provoking nature with an individual. Ill. Rev. Stat. 1979, ch. 38, par. 12—3(a).

The fact that Siler lifted up the victim's dress was highly probative of his intent to make physical contact. The fact that this confrontation had sexual overtones is insufficient to support the exclusion of the testimony by outweighing its probative value.

## IV

We are also asked to reverse defendant's conviction for burglary since the State failed to show that he entered the automobile with the concomitant intent of committing a felony. Specifically, Siler argues that there was no evidence that he intended to pull the victim's hair or grab her when he entered the automobile. He claims that this only occurred after he entered the automobile and Klimes attempted to escape.

As noted above, the fact that Siler lifted up the victim's dress—such act apparently not taken to prevent her flight—indicates that he entered the automobile with the intent to make a physical contact. This evidence alone is sufficient to support the verdict of the jury.

In addition, while it may be inferred that he did not intend to pull her hair or grab her until she attempted to escape, the fact that he tried to physically restrain the victim indicates that she was the object of his criminal design. When this fact is combined with the evidence of the sexual advance, the jury had sufficient evidence to find that Siler had the intent to commit an aggravated battery when he entered the automobile.

## V

On the authority of *People v. Scott* (1977), 69 Ill. 2d 85, 370 N.E.2d 540, the State urges this court to remand this cause for the imposition of a sentence on the aggravated battery conviction. The defendant states that he has no objection to remanding the case but urges that we impose the minimum sentence for the aggravated battery conviction under article VI, section 6, of the Illinois Constitution of 1970. That section provides that the appellate court may exercise original jurisdiction when necessary to the complete determination of any cause on review.

Although the constitution appears to give us the power to grant defendant's request, it does not mandate it. The use of the word "may" in the constitution signifies that this court has discretion in disposing of the issue. This being the case, we prefer to remand this case to the trial court. The imposition of sentences is an area which requires the trial court to act as a finder of fact, an evaluator of defendant's character, and a prognosticator of the effect of various treatments upon the defendant. Since we cannot say with certainty under the facts presented that a minimum sentence is appropriate, we remand to the trial court to consider this question.

Defendant's conviction for the offense of burglary is hereby affirmed and this cause is remanded to the trial court with directions to impose a sentence on the aggravated battery conviction.

Affirmed and remanded.

LEWIS and GREEN, JJ., concur.