THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* DAN D. LASHMETT, Defendant-Appellant.

Fourth District   No. 4—83—0318

Opinion filed August 1, 1984.—Rehearing denied August 30, 1984.

GREEN, J., specially concurring.

William S. Schildman, of Jacksonville, for appellant.

Ronald F. Robinson, State's Attorney, of Winchester (Robert J. Biderman and Denise M. Paul, both of State's Attorneys Appellate Service Com-

mission, of counsel), for the People.

JUSTICE TRAPP delivered the opinion of the court:

A jury found defendant Dan Lashmett guilty of felony theft, three counts of official misconduct, and deceptive practice. The trial court sentenced defendant to concurrent terms of 27 months' imprisonment for felony theft, one count of official misconduct, and deceptive practice, and ordered him to pay $5,800 in restitution. On appeal, defendant argues the trial court erred in refusing to allow him to impeach a State's witness with a guilty verdict returned by a Federal jury and in refusing to instruct the jury on the testimony of an accomplice. We affirm.

In early April of 1982, defendant, commissioner of Road District No. 4 in Scott County, asked Robert Staples, vice-president of Winchester National Bank, for a loan. Defendant told Staples he wanted to purchase a used truck along with two other pieces of equipment for the road district. Staples advised defendant that he would need a copy of the bill of sale and the highway superintendent's authorization before giving the loan.

On April 15, defendant told Richard Brown, superintendent of highways, that the road district needed to purchase a new truck. Defendant also informed Brown that he already had a truck in mind. Brown told defendant to purchase it after getting financing. Brown never checked out the truck, but he had seen defendant using a red two-ton Chevrolet, which he assumed defendant intended to purchase.

On the same day, defendant brought a bill of sale for a truck to Geraldine McQuire, clerk of Road District No. 4. McQuire drew a check for $5,800 payable to Dean Lindsey Auto Sales. Both McQuire and defendant signed the check.

Defendant also returned to the bank on April 15. He gave Staples a bill of sale for a truck. The bill of sale described a 1976 truck with serial number 416060H794129. Relying on the bill of sale and defendant's statement that the truck was a 1976 two-ton Chevrolet, Staples executed a note for $7,500, $5,800 of which represented the purchase price of the truck. Defendant signed the note that morning, and Brown and McQuire signed it later in the day.

A few months later, McQuire received a certificate of title from the State. The date of transfer on the title was April 15. The title, however, described a 1968 International truck with serial number 416060H794129. McQuire delivered the title to the bank. She never received a title for a 1976 Chevrolet truck.

In May 1982, police stopped defendant while he was driving a red

1971 Chevrolet truck. Illinois state police Corporal Paul Brown testified the truck was missing its vehicle identification number (V.I.N.). Brown investigated and discovered the truck had been stolen. Brown also testified that some V.I.N. tags were found at defendant's home, and he believed the V.I.N. tag to the 1971 Chevrolet was recovered. The 1971 Chevrolet had municipal plates on it, but those plates were registered to a 1965 dump truck which the road district owned.

On May 14, 1982, the Scott County sheriff impounded the 1968 International truck. An appraiser estimated its present value at $1,200 and stated it probably sold for $5,700 when new. The title history of the truck showed defendant owned it and sold it to Dean Lindsey. Lindsey then transferred title to the road district. Defendant's signature as commissioner appeared on the application to transfer title from Lindsey to the road district. Thus, the road district owns defendant's 1968 International truck, while liable to the bank for $5,800 for the purchase of a 1976 Chevrolet truck.

Lindsey testified at trial for the State. Lindsey, the owner of Dean's Auto Body & Auto Sales in Morgan County, had known defendant for three or four years. On April 14, 1982, defendant came to Lindsey with a proposition. If Lindsey purchased defendant's 1968 International truck for $5,700, then he could resell it to the road district for $5,800 and keep the extra $100 for filling out the paper work. Lindsey did not understand why defendant did not sell his truck directly to the road district, except defendant stated it would look better coming to the clerk from a car dealer rather than himself.

Lindsey agreed to the transaction and wrote up a bill of sale. On April 15, Lindsey wrote a check for $5,700 without seeing the truck. Lindsey dated his check April 16 because the banks were already closed on the 15th. Defendant gave Lindsey a check for $5,800 drawn from the road district's account. Both checks were cashed. Lindsey also filled out a title transfer application and a sales tax return reporting the sale of a 1968 International truck to the road district. Lindsey testified both he and defendant signed the sales tax return in front of a notary.

Defendant's signature appears on both the title transfer application and the notarized sales tax return. Lindsey's carbon copy of the bill of sale was also produced. There are two differences between Lindsey's copy and the copy Staples received. The transfer date on Lindsey's copy had been changed from April 14 to April 15. Lindsey admitted he changed the date so it would correspond to the date on the other documents. Lindsey's copy was for a 1968 truck while Staples' copy had been altered to read 1976. Lindsey denied changing those numbers.

Defendant's version of the transaction differed substantially from Lindsey's. Defendant had been acquainted with Lindsey for four or five years, and in 1981 Lindsey agreed to find a good four-wheel drive pickup for defendant. Defendant was to trade in several vehicles for the pickup. In December, Lindsey took possession of defendant's 1971 Dodge pickup. Lindsey did not get the title because defendant had recently bought the pickup and had not yet received title from the State. Lindsey took defendant's 1975 Cadillac in March 1982. Lindsey also took parts from defendant's 1973 pickup. In April, Lindsey had the pickup that defendant wanted, but he did not yet have clear title. Defendant, therefore, asked to be paid for the vehicles Lindsey had already taken. Lindsey agreed to pay defendant $5,700 for those vehicles plus defendant's 1968 International truck. Defendant signed a blank title application and a blank sales tax return. He then gave Lindsey the title to the 1968 truck but kept the titles to the other vehicles.

Defendant further testified he bought the stolen 1971 Chevrolet truck from Lindsey for the road district. In March 1982, defendant informed Lindsey he intended to buy a truck for the road district. Lindsey directed defendant to the farm of Rick Barrow, where defendant saw a red two-ton truck. Barrow later delivered the truck to defendant so defendant could test drive it. Defendant used the truck on road district business in the first part of April. On April 14, defendant agreed to buy the truck from Lindsey for $5,800. He took the bill of sale to McQuire and then to the bank. Defendant denied changing the numbers from 1968 to 1976 on the bill of sale. Defendant also had McQuire write a check to the State so he could transfer the license plates from the 1965 dump truck to the new truck. He placed the municipal plates on the new truck. Police later stopped defendant while he was driving the 1971 Chevrolet with the municipal plates.

At trial, defendant produced a Kentucky Department of Revenue bill of sale. It transferred a 1976 Chevrolet truck from Rick Barrow to Dean's Auto Sales on April 15, 1982. Defendant also produced a Kentucky title showing Rick Barrow as the owner of a 1976 two-ton Chevrolet. Defendant claimed Lindsey had given him these documents in the first week of May. Defendant did not give these documents to police when they impounded the 1971 Chevrolet because the police never asked him for any documents. Defendant did not know the road district owned his 1968 International truck.

Dan Jeffery Lashmett, defendant's son, corroborated his father's testimony. In March 1982, Lashmett and his father were looking for a new truck for the road district. Lindsey directed them to Barrow's farm. Barrow assured the Lashmetts that he owned the truck. Barrow

allowed the road district to test drive the truck for a week. Lashmett himself used the truck on road district business. Other defense witnesses testified they saw road district workers using a red two-ton Chevrolet truck in April and May.

Lindsey testified he did not know anyone named Rick Barrow. He denied giving defendant the Kentucky title and bill of sale. He also denied taking possession of defendant's Cadillac or Dodge truck. Lindsey stated he did not deal in large trucks, and he never sold defendant a red two-ton truck. Although his father was a road district commissioner, Lindsey claimed he did not know it would be unusual for a commissioner to sell his truck to the road district. Finally, Lindsey denied knowing that defendant intended to defraud the road district when he agreed to defendant's proposed transaction.

On January 5, 1983, a Federal jury returned a guilty verdict against Lindsey for mail fraud. Lindsey's trial, however, had not yet been completed at the time of defendant's trial. The trial judge had to hear post-trial motions and sentence Lindsey. At trial, defendant argued the jury's verdict was admissible to impeach Linsey as a prior conviction. The judge refused to admit the evidence because Lindsey's conviction was not yet final.

■ The conviction of any witness may be shown for the purpose of affecting the credibility of the witness. (Ill. Rev. Stat. 1981, ch. 38, par. 155—1.) Generally, only convictions may be proved for impeachment purposes, and proof of arrests, indictments, charges, or actual commission of a crime are not admissible. *People v. Mason* (1963), 28 Ill. 2d 396, 400, 192 N.E.2d 835, 837.

Defendant argues the jury verdict amounts to a conviction. Section 2—5 of the Criminal Code of 1961 defines conviction:

> " 'Conviction' means a judgment of conviction or sentence entered upon a plea of guilty or upon a verdict or finding of guilty of an offense, rendered by a legally constituted jury or by a court of competent jurisdiction authorized to try the case without a jury." Ill. Rev. Stat. 1981, ch. 38, par. 2—5.

■ ■ Because Lindsey had not yet been sentenced, the issue is whether a jury verdict equals a judgment of conviction. we hold that it does not. The judge, not the jury, renders judgment in a case. The jury's verdict is not final until the court accepts it. The judge must still determine whether the verdict is consonant with the law, is properly rendered, is supported by the evidence, and is to stand, fall, or suffer modification in response to a post-trial motion. (*People v. Vaughn* (1981), 92 Ill. App. 3d 913, 914, 416 N.E.2d 681, 683.) Indeed, section 102—14 of the Code of Criminal Procedure of 1963 states:

" 'Judgment' means an adjudication by the court that the defendant is guilty or not guilty and if the adjudication is that the defendant is guilty it includes the sentence pronounced by the court." (Ill. Rev. Stat. 1981, ch. 38, par. 102—14.)

In a criminal case, therefore, the sentence comprises the judgment of the court. *People v. Allen* (1978), 71 Ill. 2d 378, 381, 375 N.E.2d 1283, 1284.

A conviction contemplates more than a mere finding of guilt. (*People ex rel. Grogan v. Lisinski* (1983), 113 Ill. App. 3d 276, 281, 446 N.E.2d 1251, 1254.) "If the term 'conviction' means anything at all, it means a conviction finalized on the trial court level. Otherwise it is simply not a conviction." *People v. Spears* (1967), 83 Ill. App. 2d 18, 26, 226 N.E.2d 67, 71.

■ On appeal, defendant contends cross-examination concerning Lindsey's Federal trial would have reasonably tended to show Lindsey's interest, bias, or motive to testify falsely. (*People v. Eddington* (1979), 77 Ill. 2d 41, 46, 394 N.E.2d 1185, 1187.) We note, however, defendant never asserted any interest, bias, or motive on Lindsey's part at trial. In his offer of proof, defendant emphasized the similarity between the mail fraud charge and the offense at bar. Defendant asserted Lindsey's crime demonstrated a prior predilection toward untruthfulness. Defendant never raised the possibility that Lindsey expected leniency in return for his testimony. Where there is no showing that a witness has any expectation of leniency, cross-examination concerning pending charges would not tend to show bias or interest. (*People v. Snyder* (1979), 72 Ill. App. 3d 82, 84, 390 N.E.2d 598, 600.) Moreover, the State's Attorney had neither the power nor the authority to determine the outcome of the sentencing hearing in Federal court. (*People v. Siler* (1980), 85 Ill. App. 3d 304, 307, 406 N.E.2d 891, 894.) Lindsey's pending sentencing hearing, therefore, could not reasonably have affected his willingness to testify.

At the instruction conference, the trial court refused defendant's instruction on the testimony of an accomplice. Defendant tendered Illinois Pattern Jury Instruction, Criminal, No. 3.17 (2d ed. 1981), which states:

"When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

■ An accomplice is one who knowingly, voluntarily, and with common intent unites with the principal offender in committing the of-

fense. (*People v. Hrdlicka* (1931), 344 Ill. 211, 221, 176 N.E. 308, 313.) A finding that a witness is an accomplice entitles defendant to a cautionary instruction regarding the reliability of the witness' testimony. The test is whether there is probable cause to believe the witness is guilty, either as a principal or on an accountability theory. (*People v. Cobb* (1983), 97 Ill. 2d 465, 476, 455 N.E.2d 31, 35.) The court is not bound by the determination of the police or the State's Attorney. Instead, the court should determine on its own whether probable cause existed to charge the witness. *People v. Allen* (1983), 119 Ill. App. 3d 186, 192, 456 N.E.2d 336, 340.

■ To be accountable, a person must have the mental state required for the offense, and before or during the offense he must aid in its commission. (Ill. Rev. Stat. 1981, ch. 38, par. 5—2.) Merely showing a person's acts facilitated another's commission of an offense is not enough. It must be shown that the conduct, which facilitated the later offense, occurred with the intent that such offense be committed. *People v. Ware* (1980), 82 Ill. App. 3d 297, 306, 402 N.E.2d 762, 767.

Defendant asserts Lindsey knowingly participated in the crime. Defendant notes Lindsey took $100 merely for filling out the paper work. Defendant concludes Lindsey must have known a commissioner could not enter into this type of transaction because Lindsey's father was also a road commissioner. Lindsey testified defendant suggested the transaction because it would look better coming from a car dealer rather than himself. Lindsey, however, did not believe it was unusual for a commissioner to sell his truck to the road district. Finally, defendant contends Lindsey knew the price was too high at the time of the sale. Lindsey testified he had read in the paper that a 1968 International truck was worth $1,200 to $1,500. The remainder of his testimony, however, shows he was not aware of this fact when the transaction occurred. He never saw the truck or checked out the price. The price did not indicate anything unusual to him because he never dealt in trucks that large.

■ While Lindsey's acts may have aided defendant, the record reveals no common intent between them. Lindsey expressly denied sharing any criminal purpose with defendant. Defendant testified he did not believe Lindsey would have run the paper work through the dealership so defendant could defraud the road district. According to the State's case, Lindsey unwittingly aided defendant. The defense proceeded on the theory that Lindsey duped defendant into buying a stolen truck. It was defendant who gave both the road district and the bank the false impression that he had purchased a 1976 Chevrolet truck. Nothing in the record demonstrates any knowledge on Lindsey's

part of this deception or the alteration of the bill of sale. The mere fact that Lindsey took $100 to make a deal look better is insufficient to establish probable cause that Lindsey is accountable for defendant's offenses.

For the foregoing reasons, the judgment and sentence of the trial court are affirmed.

Affirmed.

MILLS, P.J., concurs.

JUSTICE GREEN, specially concurring:

I concur in the decision to affirm.

I disagree with the holding of the majority that the trial court properly refused to give the accomplice instruction. Lindsey admitted that he participated in a transaction whereby defendant sold him a truck for $5,700 which he then sold to the district, without looking at the truck, for $5,800. He admitted that he knew defendant wished to conceal the fact that the vehicle had belonged to him. Before making a purchase of equipment of a price in excess of $5,000 for the district, defendant was required to take bids. (Ill. Rev. Stat. 1981, ch. 121, par. 6—201.7.) For defendant to knowingly do this was official misconduct. (Ill. Rev. Stat. 1981, ch. 38, par. 33—3.) For Lindsey to aid or abet defendant in committing the offense with the intent that the offense be committed would make Lindsey guilty as an accomplice. Ill. Rev. Stat. 1981, ch. 38, par. 5—2(c).

The majority concludes that Lindsey's statement did not provide a sufficient proof of Lindsey's mental state to require the instruction, citing *Ware*. That case concerns the sufficiency of proof of mental state to convict on an accountability theory when all of the evidence is circumstantial. Here the proof need only show probable cause. The circumstantial evidence that (1) Lindsey knew that defendant was asking for his participation in order to conceal the true nature of the transaction, and (2) Lindsey proceeded with the transaction without examining the vehicle to see if the transaction was *bona fide* creates a sufficiently strong inference of the necessary mental state to make a showing of probable cause.

Because of the strength of the other evidence of defendant's guilt and the flimsy nature of the explanation given by defendant, I consider the evidence of defendant's guilt to be overwhelming without Lindsey's testimony. Therefore, the refusal to give the accomplice instruction was harmless error. The affirmance was correct.