THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
DALE BARKER, Defendant-Appellant.
Fourth District   No. 15542

Opinion filed November 19, 1979.

Richard J. Wilson and Daniel D. Yuhas, both of State Appellate Defender's Office, of Springfield, for appellant.

Patrick M. Walsh, State's Attorney, of Decatur (Marc D. Towler and Karen L. Boyaris, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE GREEN delivered the opinion of the court:

After a trial by jury in circuit court of Macon County, defendant, Dale Barker, was found guilty of misdemeanor theft (Ill. Rev. Stat. 1977, ch. 38, par. 16—1). Defendant was sentenced to a term of imprisonment of 364 days.

On appeal, the defendant asserts (1) his right to a fair trial was denied when the trial court refused to give the jury an accomplice instruction, (2) his right to a fair trial was denied when the trial court allowed him to be impeached with a prior conviction for indecent liberties with a child, and (3) his acquittal by the jury for burglary collaterally estopped it from finding him guilty of misdemeanor theft.

Very briefly, the evidence indicated that the Salvation Army store located in Decatur, Illinois, was broken into in the evening of November 14 or early morning of November 15, 1978. O. B. Burnett, the manager of the store, testified that several of the store windows had been broken and the latches below the windows had been broken. Numerous boxes of merchandise had been scattered throughout the store and several boxes containing clothing had been opened with various amounts of clothing removed from each box. A brown vinyl rug had also been taken from the furniture and appliance section of the store. Burnett testified that approximately five days after the break-in, a woman named Amy returned much of the clothing which had been taken. Burnett recognized the clothing from the red, white, yellow, and blue price tags which were still affixed.

The principal prosecution witness was the defendant's wife, Amy Barker. She had originally been charged with the same crimes as the defendant but her charges had been dismissed in exchange for her testimony against her husband. Mrs. Barker testified that she had married the defendant on November 4, 1978, and that they had resided in an apartment located near the Salvation Army store. She recalled that approximately three or four weeks after being married, she had looked out the window and had seen her husband behind the Salvation Army store standing on top of garbage cans. Shortly after this she heard a "ticking" sound. That same evening the defendant brought to the apartment the brown vinyl rug previously identified by Burnett. She also received several items of clothing from the defendant. Mrs. Barker testified that approximately a week later she returned these clothes to the store.

Two Decatur police officers testified that when questioned about the

burglary, the defendant said that the rug had been taken to the apartment by a man named Bob, whose last name he did not know, and that he had found some of the clothing behind the Salvation Army where it had been dropped.

Defendant testified on his own behalf. He stated that he married Amy Barker on November 4, 1978, but stayed with her only three or four days before returning to live with his mother and stepfather. He further stated that on November 14, 1978, he helped his family move into a new home. During the evening of that day, he, along with his brother-in-law, left the family residence only a few moments to buy cigarettes. For the remainder of the evening he remained at home. The defendant's mother, sister, and brother-in-law testified that on November 14, 1978, defendant had helped the family move and that he did not leave the family home for any appreciable time that night.

Defendant was not asked on direct examination about any of the items nor was he asked about them on cross-examination other than with regard to the nature of statements he made to the police officers. His answers to those questions were ambiguous as to whether he was stating what had happened or as to what he said to the officers. The substance of his answers was that "Bob" had left the rug at the apartment and he had given Amy a blouse and a pair of pants that he had gotten from a niece.

During rebuttal, the State, over defense objection, introduced into evidence defendant's prior conviction for indecent liberties with a child. Later, when the court held the conference for jury instructions, defendant tendered Illinois Pattern Jury Instruction, Criminal, No. 3.17 (1968) on the testimony of an accomplice. The State objected to this instruction on the grounds there was "no basis for the giving of this instruction." The trial court sustained the State's objection.

■■ Defendant's first claim of error arises from the trial court's refusal to tender the accomplice instruction. Since this instruction related to the testimony of Amy Barker, the first step is to determine whether she was an accomplice. The supreme court has defined an accomplice as one who could himself have been indicted for the offenses either as a principal or accessory. *People v. Robinson* (1974), 59 Ill. 2d 184, 319 N.E.2d 772; *People v. Hrdlicka* (1931), 344 Ill. 211, 176 N.E. 308.

There was no basis in the evidence at trial for determining Mrs. Barker to be an accomplice. However, the record showed that she had been originally named as a codefendant and at a preliminary hearing a probable cause to charge her had been found to exist. She admitted that the charges had been dropped upon her agreement to testify for the prosecution. Although no case has been called to our attention where the determination that a witness was an accomplice has been made in this

way, the record places Mrs. Barker squarely within the accepted definition of the term.

The supreme court has stated that the testimony of an accomplice should be acted upon with great caution and only when the jury is satisfied from the evidence that such testimony is true. (*People v. Johnson* (1925), 317 Ill. 430, 148 N.E. 255.) It is a duty of a trial court to fully and fairly instruct the jury as to the tainted character of such testimony. (*People v. Zaransky* (1935), 362 Ill. 76, 199 N.E. 104; *People v. Butler* (1974), 23 Ill. App. 3d 108, 318 N.E.2d 680.) In *People v. Buffington* (1977), 51 Ill. App. 3d 899, 366 N.E.2d 1099, a trial court's refusal to tender the accomplice instruction was by itself found to be reversible error. After determining that the State's chief witness was an accomplice, the court on review reversed and remanded a defendant's burglary conviction.

■■ The State argues that the defendant waived this issue by not raising it in his post-trial motion. However, the State's case rests upon defendant's possession of the stolen goods not being satisfactorily explained and, other than testimony of his admission of having found some items by the Salvation Army, proof of defendant's possession of the items is based entirely on Mrs. Barker's testimony. Accordingly, we hold that because of the importance of her testimony, the refusal of the instruction was plain error under Supreme Court Rule 615(a) (58 Ill. 2d R. 615(a)) and requires that defendant be afforded a new trial.

Defendant has also argued that he was improperly impeached by his prior conviction for indecent liberties with a child. Because of our ruling on the defendant's first claim of error, we need not rule on this issue. This panel is not in unanimity as to the propriety under these circumstances of introducing the defendant's prior conviction for indecent liberties with a child. This court has previously spoken on this point. (See *People v. Wright* (1977), 51 Ill. App. 3d 461, 366 N.E.2d 1058; *People v. Guthrie* (1978), 60 Ill. App. 3d 293, 376 N.E.2d 425; *People v. Warfel* (1979), 67 Ill. App. 3d 620, 385 N.E.2d 175.) It is important to note that under *People v. Montgomery* (1971), 47 Ill. 2d 510, 268 N.E.2d 695, the trial court must balance the prejudicial effect of the use of the conviction against its probative value. Although the best practice is for a trial court to affirmatively state in the record that it did engage such a balancing, it is not necessary for the trial court to affirmatively state the factors considered in deciding to permit the impeachment. *People v. Washington* (1973), 55 Ill. 2d 521, 304 N.E.2d 276; *People v. Owens* (1978), 58 Ill. App. 3d 37, 373 N.E.2d 848.

■■ Finally, defendant relies on *Ashe v. Swenson* (1970), 397 U.S. 436, 25 L. Ed. 2d 469, 90 S. Ct. 1189, in arguing that his acquittal by the jury for

burglary collaterally estopped the jury from finding him guilty of misdemeanor theft. However, in *People v. Joyner* (1972), 50 Ill. 2d 302, 278 N.E.2d 756, the supreme court held that *Ashe* had no application where two offenses were joined for a single prosecution or trial. Furthermore, under *People v. Dawson* (1975), 60 Ill. 2d 278, 326 N.E.2d 755, *cert. denied* (1975), 423 U.S. 835, 46 L. Ed. 2d 54, 96 S. Ct. 61, the supreme court indicated that multiple verdicts may stand even if they are legally inconsistent. We therefore hold that defendant's acquittal for a burglary did not collaterally estop his conviction for misdemeanor theft.

For the reasons set forth above, the defendant's conviction is reversed and the cause is remanded for retrial.

Reversed and remanded.

TRAPP and CRAVEN, JJ., concur.