THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* JAMES E. HALL, Defendant-Appellant.

Fifth District   No. 79-225

Opinion filed March 4, 1980.

John H. Reid and John W. McGuire, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Nicholas G. Byron, State's Attorney, of Edwardsville (Martin N. Ashley and Christopher S. Carroll, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mme JUSTICE SPOMER delivered the opinion of the court:

Defendant-appellant James E. Hall was convicted of attempt armed robbery after a jury trial in the Circuit Court of Madison County and was sentenced to 10 years imprisonment. On appeal, he contends that he was not proved guilty beyond a reasonable doubt, that the trial court should have cautioned the jury about the suspect nature of the testimony of an accomplice, that he was denied a fair sentencing hearing, and that the sentence imposed was excessive. Because of the result we reach, we need consider only the first two issues raised, and we set out only those facts necessary to understand our resolution of those issues.

The victim of the offense was Stephen Makarewicz, the night manager of a cocktail lounge and liquor store in Granite City. He testified that he was working there about 11 p.m. on December 14, 1978, when a white Chevelle automobile pulled up to the drive-up window. The driver asked for a six-pack of beer. When Makarewicz asked to see his identification, the driver pointed a pistol at him. Another man, whom Makarewicz had noticed inside the lounge moments before (later identified as Carvel Norfolk), then appeared at the window, also holding a pistol. Norfolk told Makarewicz to give him the money or he would blow his head off. When Makarewicz reached for the key to the cash register, Norfolk hit him on the head with the pistol and warned him not to set off an alarm. At this point, a janitor came out the back door, saw what was happening, and retreated inside. The driver yelled at Norfolk to hurry up and began to ease the car forward. As Norfolk left, Makarewicz reached for his gun and fired three shots. He shot out the rear and rear passenger windows of the car and hit Norfolk. The area outside the drive-up window was very well lit, and the driver of the car was only three to four feet away from Makarewicz. He estimated that he observed the driver for 30 to 60 seconds. The driver wore sunglasses and a wide-brimmed hat with a floppy brim. Makarewicz identified the defendant, whom he had picked out of a lineup prior to trial, as the driver of the automobile. As far as he could tell, the driver and Norfolk were the only persons involved in the offense. Makarewicz did not see anyone in the back seat of the car.

Kenneth Bevel was initially named as a co-defendant, also charged with attempt armed robbery. Prior to the defendant's trial, Bevel entered a plea of guilty to a reduced charge of attempt theft and was sentenced to a year's probation. He was called to testify at the defendant's trial on behalf of the State. According to Bevel, he, Norfolk, and the defendant were driving around on the night of December 14 in the defendant's brother's Chevelle. The defendant was behind the wheel, Norfolk was in the front passenger seat, and Bevel was in the back seat. The defendant and Norfolk began to discuss robbing a liquor store and he told them that they were crazy to do it. Bevel claimed that he had not seen any guns until they were displayed at the drive-up window; he did not know that the defendant and Norfolk planned to commit a robbery when he got into the car with them. He did not participate in the attempt robbery nor help Norfolk nor the defendant in any way. He was lying on his back in the back seat looking up during the abortive robbery. He could see Makarewicz at the window, but did not think that Makarewicz could see him. The defendant dropped Bevel off at his home after they fled the scene of the crime.

The defendant testified that earlier on December 14 he had agreed to give Bevel and Norfolk a ride some place. They came over to his mother's house in St. Louis about 7 p.m. When he started his Continental, he found that it was low on water and running hot, so he decided to drive his brother's white Chevelle. He started the car, then went inside to tell his brother that he was borrowing it. While he was in the house, the telephone rang and he spoke with his friend Ralph Woods on the telephone for about five minutes. Woods asked him to come over to his house that evening. When he went back outside, he found that the Chevelle was gone. He was not too upset that Bevel and Norfolk had taken the car. He went back inside to wait for them to return. About 9 o'clock, he walked over to Woods' house, where he remained for 2 to 2½ hours. It was close to midnight when he left. Walking home he passed a service station managed by one of his brothers and saw the Chevelle parked there. The back window and the window on the passenger's side were broken out and the keys had been left in the car. He drove the car back to his mother's house and parked it in the back yard. He later told his brother that the damage had been caused during a disturbance at a skating rink. The next day he helped his brother apply a coat of primer to the damaged car. He did not notice any bullet holes. Several days later, when he learned that the police were looking for him, he turned himself in. He testified that he was nowhere near Granite City, Illinois, on December 14, 1978.

The defendant's alibi testimony was corroborated by Ralph Woods, who said that the defendant had arrived on foot at his house at about 8:40 or 8:45 p.m., and stayed until nearly midnight.

Makarewicz testified in rebuttal that Bevel was not the driver of the car involved in the crime.

■■■ We agree with the State that the evidence presented was sufficient to support the guilty verdict. The testimony of one credible eyewitness who viewed the defendant under circumstances that would permit a positive identification is sufficient to convict, despite the presentation of an alibi defense. (*People v. Weatherspoon* (1978), 63 Ill. App. 3d 315, 379 N.E.2d 847.) It is the province of the jury to weigh and balance the identification testimony against the alibi presented by the defendant. (*People v. Smith* (1978), 59 Ill. App. 3d 480, 375 N.E.2d 941.) Here, in addition to the identification by Makarewicz, the jury had before it the testimony of Bevel and the evidence tending to show that the defendant attempted to camouflage the fact that his brother's car had been fired upon. We must therefore reject the contention that the evidence was insufficient to prove the defendant guilty beyond a reasonable doubt.

However, we agree with the defendant that the trial court committed reversible error in refusing to give his tendered instruction, Illinois Pattern Jury Instructions, Criminal, No. 3.17 (1968). That instruction provides:

> "An accomplice witness is one who testifies that he was involved in the commission of a crime with the defendant. The testimony of an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

The rationale behind the giving of the instruction was stated in *People v. Riggs* (1977), 48 Ill. App. 3d 702, 705, 363 N.E.2d 137, 139:

> "Due to the relationship of the witness and the State, there may be a strong motivation to testify falsely for the accomplice who seeks, hopes or expects lenient treatment by the State in return for favorable testimony. [Citations.] Thus a witness, knowing that his own guilt is detected, may seek to shield himself from punishment by purchasing immunity or leniency by falsely accusing others and procuring their conviction. Even if a promise or expectation of leniency is denied, its existence is always suspected. [Citation.] Therefore a judicial instruction cautioning the jury that the testimony of an accomplice is subject to suspicion has been felt warranted. [Citation.]"

The generally accepted test as to whether a witness is an accomplice is whether or not he himself could have been charged with the offense with which the defendant is charged. *People v. Buffington* (1977), 51 Ill. App. 3d 899, 366 N.E.2d 1099; *People v. Coddington* (1970), 123 Ill. App. 3d 351, 259 N.E.2d 382.

■■ Relying on *People v. Villanueva* (1977), 46 Ill. App. 3d 826, 361

N.E.2d 357, the State argues that the instruction was properly refused here because the proof at trial did not show that Bevel knowingly, voluntarily, and with common intent united with the defendant in the commission of the crime. We conclude, however, that Bevel must be considered an accomplice because he was in fact charged with the offense for which the defendant was standing trial.

Our decision is consistent with a recent opinion of the Appellate Court for the Fourth District. In *People v. Barker* (1979), 78 Ill. App. 3d 686, 397 N.E.2d 552, the court found no basis in the evidence for determining the witness in question to be an accomplice. However, because the record revealed that the witness had originally been named as a co-defendant, the court held that she came "squarely within the accepted definition" of an accomplice witness. Refusal of the accomplice instruction was held to be plain error despite the defendant's failure to preserve it.

The facts of *Villanueva*, where the court held that the accomplice instruction was not proper with respect to the testimony of an informant, because his intent was to gather evidence, are clearly distinguishable from those of the instant case.

It has long been the law in this State that the testimony of an accomplice should be acted upon only when the jury is satisfied from all the evidence that the testimony is true, and that it is the duty of a trial court to instruct the jury as to the tainted character of such testimony. (*People v. Johnson* (1925), 317 Ill. 430, 148 N.E. 255; *People v. Zaransky* (1935), 362 Ill. 76, 199 N.E. 104; *People v. Barker*.) As this court said in *Buffington*, the cautionary purpose of the instruction "would be emasculated if the instruction could be avoided by a witness' mere assertion of a noncriminal intent." 51 Ill. App. 3d 899, 903, 366 N.E.2d 1099, 1102.

In light of the importance of Bevel's testimony to the State's case, the error in refusing the tendered instruction was clearly prejudicial and not harmless beyond a reasonable doubt. We therefore must reverse and remand this cause to the Circuit Court of Madison County for a new trial.

Reversed and remanded.

KASSERMAN and HARRISON, JJ., concur.