THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* RONALD BAKER, Defendant-Appellant.

First District (1st Division) No. 81—1945

Opinion filed December 6, 1982.—Rehearing denied January 5, 1983.

Michael Jay Green and Daniel F. Murray, both of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat, Dean P. Karlos, and Denise O'Malley Porn, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE CAMPBELL delivered the opinion of the court:

Defendant was found guilty by a jury of robbery and was sentenced to a term of six years. On appeal, defendant raises the following issues: (1) whether the evidence established defendant's guilt beyond a reasonable doubt; (2) whether the trial court erred in its refusal to instruct the jury on the testimony of an accomplice; (3) whether defendant was denied a fair trial by the closing argument of the State; and (4) whether defendant's sentence was an abuse of discretion.

The State's first witness, Glenda Hodge, testified that on December 18, 1980, at approximately 11:45 p.m., she was walking on North State Parkway in Chicago. She stated that she noticed a shadow behind her and that she turned around and saw a man who she identified in court as defendant. She testified that she observed defendant from a distance of 12 inches. Defendant "swept his arms" around the witness and threw her to the ground. She stated that defendant told her that he wanted her fur coat. While the witness was removing her coat, she looked at defendant's face. She also testified that defendant struck the back of her head. The witness observed a car driving away after defendant took her coat. She testified that Detective Carroll came to her apartment on December 27, 1980, and that he showed her seven or eight photographs of which she selected three. On De-

cember 31, she identified defendant in a lineup. She also identified a coyote coat which was taken from her on December 18. She stated that she recognized her coat by the furrier's label and by her initials "GHT" which were monogrammed on the inside pocket.

Annette Lesniewski stated that she had been living with defendant since September 1980. On December 18, she and defendant were in defendant's car in the near north area of Chicago. She testified that she was driving. She had previously told defendant that she had wanted a fur coat for Christmas and that, as they were driving, defendant asked whether she liked the coat which was worn by a woman who was walking. Lesniewski responded affirmatively and defendant told her to stop the car. Defendant then exited the car and approached the woman from the rear. The witness testified that defendant struck the woman, removed her coat and ran to the car. Defendant ordered the witness to drive away from the area.

Lesniewski stated that on December 26, a police officer came to the shelter for abused women where she was residing and that she gave the officer the fur coat. She stated that she had worn the coat to the West Chicago police station on Christmas day, at which time she filed a complaint against defendant for unlawful restraint. After she was informed the coat was stolen, she told the police that she had received the coat from defendant. She testified that she did not tell anyone that the coat was stolen.

Detective Paul Carroll of the Chicago Police Department stated that on December 27, Glenda Hodge selected three photographs from a group of eight photographs. He testified that he arranged a lineup for Hodge and that, of the three men whose photographs Hodge had selected, only defendant was present in the lineup.

Following the close of the State's case, a preliminary instruction conference was held. Defense counsel tendered Illinois Pattern Jury Instruction, Criminal, No. 3.17 (1968) (hereinafter cited as IPI Criminal) which deals with the testimony of an accomplice. The court indicated that it would reserve ruling on whether it would give this instruction to the jury.

The defense's first witness was Officer June McDowall of the West Chicago Police Department. She corroborated Lesniewski's testimony about the filing of a complaint against defendant. She also indicated that she had spoken with defendant concerning an impounded vehicle and that she had contacted the Chicago Police Department concerning the theft of the fur coat. The mother of defendant testified about defendant's relationship with Lesniewski and that she had received numerous telephone calls from Lesniewski after defendant

and Lesniewski stopped living with one another. Mary Kurtzrock testified that she assisted defendant in the collection of rents at the apartment building where they lived. She stated that she was at defendant's apartment on December 19 and that Lesniewski was wearing a fur coat when Lesniewski entered the apartment. Defendant and Lesniewski argued about the fur coat for approximately 10 minutes, after which time defendant left the apartment. According to the witness, Lesniewski then began to "model" the coat.

Defendant Ronald Baker testified about his relationship with Lesniewski. He stated that on December 17, 1980, she had taken his car without his permission and that he next saw her on December 19. Lesniewski and defendant argued about the fur coat which Lesniewski was wearing when she entered defendant's apartment. Lesniewski left after about 30 minutes. Mary Kurtzrock came to the apartment to deliver rent money which she had collected and while she was there, Lesniewski returned. Defendant and Lesniewski again argued about the coat. Defendant then left the apartment.

Defendant stated that he next saw Lesniewski on December 25 and that they had argued again. He testified that Lesniewski's complaint to the West Chicago police resulted in his arrest. He saw Lesniewski at the police station and that she was wearing the fur coat. On December 26, after he was released from jail, he told Officer McDowall that Lesniewski's coat was stolen and that she and a man named Brandy had taken the coat. On December 30, defendant spoke with Officer Carroll and on the following day he was arrested. He stated that he did not take the fur coat and that he was told by Lesniewski that she and Brandy had taken the coat.

The defense then rested its case. The court ruled that IPI Criminal No. 3.17 would not be given to the jury. Defendant was found guilty of robbery and was sentenced to a term of six years.

 Defendant first maintains that the evidence did not establish his guilt beyond a reasonable doubt. We disagree. The testimony of a single credible eyewitness who had the opportunity to observe defendant under circumstances which would permit a positive identification is sufficient to convict, even though the eyewitness' testimony is contradicted by the accused. (*People v. Yarbrough* (1977), 67 Ill. 2d 222, 367 N.E.2d 666; *People v. Stringer* (1972), 52 Ill. 2d 564, 289 N.E.2d 631.) It is for the jury to evaluate the testimony and to determine the credibility of the witnesses. (*People v. Manion* (1977), 67 Ill. 2d 564, 367 N.E.2d 1313, *cert. denied* (1978), 435 U.S. 937, 55 L. Ed. 2d 533, 98 S. Ct. 1513.) In the instant case, the evidence is not so implausible or improbable as to raise a reasonable doubt of defendant's

guilt. See *People v. Sangster* (1982), 91 Ill. 2d 260, 437 N.E.2d 625.

Defendant next argues that Lesniewski was an accomplice to the robbery and the trial court erred in its refusal to give to the jury IPI Criminal No. 3.17 concerning accomplice testimony. This instruction states:

> "An accomplice witness is one who testifies that he was involved in the commission of a crime with the defendant. The testimony of an accomplice witness is subject to suspicion, and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

In our analysis of this issue, it is necessary to first determine whether there was sufficient evidence to show that Annette Lesniewski was an accomplice. In *People v. Nowak* (1970), 45 Ill. 2d 158, 168, 258 N.E.2d 313, 318, the supreme court defined an accomplice as "one who could himself have been indicted for the offense either as a principal or accessory." (See also *People v. Robinson* (1974), 59 Ill. 2d 184, 319 N.E.2d 772.) Lesniewski testified at trial that she had expressed a desire for a fur coat. She also stated that on the evening of the offense, she was driving defendant's car and was indicating to defendant whether she liked a particular coat. In addition, Lesniewski and others testified that she had worn the coat subsequent to the robbery. The State, in its brief, concedes that while Lesniewski may "technically qualify as an accomplice, her involvement in the crime appears to have been only peripheral."

In *People v. Unger* (1977), 66 Ill. 2d 333, 362 N.E.2d 319, the supreme court indicated that both the State and defendant are entitled to appropriate jury instructions which present their theories of the case to the jury when and if such theories are supported by the evidence. Based upon the foregoing, we determine that there was sufficient corroborating evidence to support defendant's theory that Lesniewski was an accomplice to the robbery and, therefore, the tendered instructions should have been given. In *People v. Riggs* (1977), 48 Ill. App. 3d 702, 705, 363 N.E.2d 137, 139, the purpose of the accomplice instruction was stated as follows:

> "Due to the relationship of the witness and the State, there may be a strong motivation to testify falsely for the accomplice who seeks, hopes or expects lenient treatment by the State in return for favorable testimony. [Citation.] Thus a witness, knowing that his own guilt is detected, may seek to shield himself from punishment by purchasing immunity or leniency by falsely accusing others and procuring their conviction. Even if a promise or expectation of leniency is denied, its existence is

always suspected. [Citation.] Therefore a judicial instruction cautioning the jury that the testimony of an accomplice is subject to suspicion has been felt warranted. [Citation.]"

In light of the rationale behind the giving of the accomplice instruction, we cannot say that the failure to give this instruction was harmless error as the State maintains. See *People v. Hall* (1980), 81 Ill. App. 3d 322, 401 N.E.2d 635; *People v. Barker* (1979), 78 Ill. App. 3d 686, 397 N.E.2d 552; *People v. Buffington* (1977), 51 Ill. App. 3d 899, 366 N.E.2d 1099.

In light of this holding, we need not address the remaining two issues raised by defendant. Accordingly, the judgment of the circuit court of Cook County is reversed and remanded for a new trial.

Judgment reversed and remanded.

GOLDBERG AND O'CONNOR, JJ., concur.