THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
CYNTHIA L. ALLEN, Defendant-Appellant.

Fourth District   No. 4—83—0136

Opinion filed November 9, 1983.—Rehearing denied December 9, 1983.

Daniel D. Yuhas and Lawrence Bapst, both of State Appellate Defender's Office, of Springfield, for appellant.

Edward Litak, State's Attorney, of Danville (Robert J. Biderman and David E. Mannchen, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE WEBBER delivered the opinion of the court:

Defendant, together with Denise Suggs, Anthony Long, and Daniel Davis, was charged by information in the circuit court of Vermilion County with the offenses of burglary, felony retail theft, and felony theft in violations of sections 19—1(a), 16A—3(a), and 16—1(a) of the Criminal Code of 1961 (Ill. Rev. Stat. 1981, ch. 38, pars. 19—1(a), 16A—3(a), 16—1(a)). Long entered a plea of guilty to an amended charge; the information was dismissed as to Davis with leave to reinstate; Suggs' case was severed; and defendant was found guilty by a jury of felony retail theft and felony theft, but not guilty of burglary. She was sentenced to 30 months of probation, two conditions of which were that she make restitution in the amount of $2,867 and serve six months' imprisonment in the county jail. Sentence was entered on the felony theft charge, the trial court holding that the retail theft charge had merged into it. This appeal followed.

On appeal defendant raises three issues: (1) error in refusal by the trial court to give the tendered instruction on accomplice testimony; (2) error by the trial court in permitting Long to testify over objection as to statements made by Suggs, a codefendant; and (3) error in the computation of restitution.

Some recapitulation of the facts is necessary to the understanding of the issues. Defendant and the other three persons involved were residents of Terre Haute, Indiana. On December 22, 1981, they drove from that city to Danville, Illinois. Long testified that they used a car belonging to another person and that he was the driver, Davis rode in the passenger seat in the front, and defendant and Suggs rode in the rear seat. On arriving at Danville they went to the area of the Meis Department Store and parked. Defendant and Suggs went into the store and the men remained in the car.

Michael Chumley, an employee of the Meis Department Store, testified that on December 22, 1981, he observed two large black women in the coat department, identifying them as Suggs and the defendant. He stated that the defendant went into a fitting room while Suggs engaged him in conversation about putting a number of dresses on layaway. About 15 minutes later defendant left the fitting room and handed a pantsuit to Nancy Gilbreath, another employee of Meis; she then went directly out the front door of the store. Chumley did not see her carrying anything. At about the time defendant left the fitting room, Suggs decided that she was no longer interested in dresses on layaway, broke off the conversation, and left the store.

Ms. Gilbreath then entered the fitting room and found an empty

hanger with a fur coat tag on it. A second hanger with a broken chain was found among the fur coats. Chumley then explained the store's procedures for tagging coats and other clothing. With coats a three-part tag is used, one part of which is removed at the time of sale; with dresses and other items, the entire tag is removed when the item is sold. He then identified various exhibits as being blouses and dresses and two fur coats, all of which he stated were the property of the Meis Department Store, except one of the coats which was a brand not carried by Meis. He was able to do this by reason of the presence of tags on the various items of merchandise.

When the defendant left the fitting room and the empty hangars were discovered, David Haley, the store security officer, was told to follow her and Suggs and obtain the license number of any car which they might enter. Haley testified that he followed Suggs and saw her meet the defendant next to a 1976 cream-colored Oldsmobile; there were two white males in the front seat of this automobile; and there was no one else in or near the car. After he had been told by Ms. Gilbreath about the missing coat, he notified the police and gave them a description of the car, its occupants, and the license number.

All of the foregoing events occurred at about 12:30 p.m. About 12:57 p.m. on the same day the car was stopped in a Danville merchant's parking lot by Officer Dicken of the Danville police. He testified that Long was the driver, and Suggs, Davis and the defendant were passengers. He observed two fur coats and numerous other items of clothing lying on the back seat of the car and then placed all four persons under arrest. He identified various exhibits as items of clothing taken from the car.

Anthony Long testified for the State. The record is somewhat deficient in demonstrating his exact status. He stated that he had entered into a plea agreement regarding the charges which grew out of the incident at bar. However, he appeared unsure as to some of the particulars of that agreement; he did not know whether it was to a reduced charge; however, the docket sheet indicates that he pleaded to an amended information, the nature of which is not shown. Both the docket sheet and Long's testimony are confirmatory of the fact that part of the agreement was that he testify against the defendant in the instant case. Also, the record does not reveal that any preliminary hearing was held in Long's case.

Long stated that the defendant had asked him to take her shopping at the Village Mall in Danville and that he and the others then proceeded from Terre Haute to Danville as has been recounted. He was asked on cross-examination about conversation during that trip

as follows:

> "Q. [by defense counsel] And at that time in the car on the ride from Terre Haute to Danville, did anyone mention taking any merchandise from Meis; is that correct?
>
> A. No, they didn't.
>
> Q. Did you talk about shopping at Meis; is that correct?
>
> A. We had conversation going on, but it was just stuff, you know, about the weather, and you know, the radio stations, what not."

He then stated that they arrived at the mall and the two women went into Meis' while he and Davis remained in the car. After a short time, the defendant and Suggs came out of the store with two shopping bags which they placed in the car and then re-entered the store. At this juncture Long stated that he and Davis left the car to purchase cigarettes at a nearby drugstore. When they returned to the car, the defendant was seated in it with the two shopping bags. Shortly afterwards Suggs came out of the store and at that time someone was writing something down. Long stated that he believed the person was writing the license number of the car.

Long's testimony continued: after Suggs and the defendant were in the car he turned to the back to ask directions out of Danville and saw Suggs pulling "some stuff," "some clothes," out from under her coat; he also saw a brown fur coat. He started toward Terre Haute but the icy conditions of the road caused him to turn back into Danville, where the car was stopped by the police about one-half hour later. He was asked about conversations between the defendant and Suggs during this time interval. Objection was interposed by defense counsel but overruled by the trial court. Long answered:

> "Neese [Suggs] had been taking to Cynthia [defendant] about selling the merchandise, and Cynthia was kinda just going along with her. She hadn't said much about it. And that's about all the conversation was about, was how they were going to sell it when they returned back to Indiana."

On cross-examination this statement was further elaborated as follows:

> "Q. [by defense counsel] When you say she was going along with Denise [Suggs], what do you mean?
>
> A. Well, like Neese would say, do you think we could get this out of this, or what not; and Cynthia would say yes or maybe not."

Long also stated that when he saw Suggs take the clothing out from under her coat, he suspected she had not paid for it; and that he did

not want to help her elude the police, but also he did not want to get into any trouble.

That was the State's case. For the defense a witness testified in impeachment of Long by stating that he was present at a prior conversation between Long and the defendant wherein Long stated that the defendant did not converse with Suggs about selling the clothing.

The defendant took the stand in her own behalf and testified to a general denial of taking anything from the Meis store or helping anyone else to do so. She maintained that when she returned to the car, she saw a lot of sacks containing clothing but did not know how they got there. She also claimed that Suggs met a friend named Kathy at the Meis store and that Kathy was about defendant's build and was wearing similar clothing, especially a similar coat.

At the instruction conference defense counsel tendered Illinois Pattern Jury Instruction (IPI), Criminal, No. 3.17 (2d ed. 1981) concerning the testimony of an accomplice. The trial court refused the instruction. During argument on it, the prosecutor stated that Long, the alleged accomplice, had pleaded guilty to the offense of theft, but had originally been charged as a codefendant with Allen. The specific charge to which he pleaded was not indicated.

At the sentencing hearing a letter was received from Meis' manager, Chumley, in which he stated that the value of the merchandise taken was $2,867, but if it were returned, a 50% mark-down would be allowed in order to sell wares which had been out of stock for more than 11 months. The trial court set restitution in the full amount of $2,867.

Defendant's principal contention on appeal concerns the refusal of the trial court to give IPI Criminal No. 3.17. She maintains that Long was an accomplice and therefore it was reversible error for the trial court to refuse to instruct the jury as to how to deal with his testimony. She further asserts that the error is of greater magnitude in this case where she testified and thus her credibility versus Long's credibility is crucial.

IPI Criminal No. 3.17 provides:

> "When a witness says he was involved in the commission of a crime with the defendant, the testimony of that witness is subject to suspicion and should be considered by you with caution. It should be carefully examined in light of the other evidence in the case."

The trial court offered no specific reason for its refusal other than to comment that there was no testimony in the case fitting the precise words of the instruction; *i.e.*, the witness saying that he was involved

in the commission of the crime.

A series of supreme court cases have dealt with the question of determining who is an accomplice for the purpose of the instruction. The earlier case of *People v. Hrdlicka* (1931), 344 Ill. 211, 221-22, 176 N.E. 308, 313, stated the doctrine as follows:

> "An accomplice is defined as one who knowingly, voluntarily and with common intent with the principal offender unites in the commission of a crime. (1 Wharton on Crim. Evidence,-- 10th ed.--sec. 440; Jones on Evidence,--2d ed.--sec. 768; *People v. Sapp*, 282 Ill. 51; *Hoyt v. People*, 140 id. 588.) The generally accepted test as to whether a witness is an accomplice is whether he himself could have been indicted for the offense, either as principal or accessory. If he could not then he is not an accomplice. The term 'accomplice' cannot be used in a loose or popular sense so as to embrace one who has guilty knowledge or is morally delinquent or who was even an admitted participant in a related but distinct offense. To constitute one an accomplice he must take some part, perform some act or owe some duty to the person in danger that makes it incumbent on him to prevent the commission of the crime."

The *Hrdlicka* court then went on to examine the evidence in the case and concluded that the witness was not an accomplice within the stated definition.

The next principal authority came in *People v. Robinson* (1974), 59 Ill. 2d 184, 319 N.E.2d 772. In that case the court quoted the language above from *Hrdlicka*, and, after examining the evidence, concluded that the witness was not an accomplice.

The supreme court's most recent statement came in *People v. Cobb* (1983), 97 Ill. 2d 465. The court cited both *Hrdlicka* and *Robinson*, holding that the test is whether there is probable cause to believe that the witness is guilty, either as principal or on a theory of accountability. The court then went on to say:

> "Although Santini professes not to have known about the planned armed robbery of Mel's restaurant, there is, nonetheless, sufficient evidence in the record to justify her indictment either as a principal or on the theory of accountability." (97 Ill. 2d 465, 476.)

The evidence which appeared to persuade the court was that in addition to driving the get-away car, the witness failed to report the crimes to the police for three weeks. The court also commented on an admission by the witness in a prior out-of-court statement that she was a participant in the crimes, although the statement was not ad-

missible for lack of foundation.

In our opinion one significant lesson to be learned from these authorities is that the reviewing court in each instance surveyed the evidence in the record and made its own determination as to whether probable cause existed to charge the witness. The supreme court did not appear to be bound by the determination of the police or the State's Attorney. The "test" was applied by the court itself.

Standing in contradistinction to these cases are two appellate court decisions, *People v. Barker* (1979), 78 Ill. App. 3d 686, 397 N.E.2d 552, which was followed in *People v. Hall* (1980), 81 Ill. App. 3d 322, 401 N.E.2d 635.

In *Barker* the court acknowledged the test of indictment set forth in *Hrdlicka* and *Robinson,* but then went on:

> "There was no basis in the evidence at trial for determining Mrs. Barker to be an accomplice. However, the record showed that she had been originally named as a codefendant and at a preliminary hearing a probable cause to charge her had been found to exist. She admitted that the charges had been dropped upon her agreement to testify for the prosection. Although no case has been called to our attention where the determination that a witness was an accomplice has been made in this way, the record places Mrs. Barker squarely within the accepted definition of the term." (78 Ill. App. 3d 686, 688-89, 397 N.E.2d 552.)

It is thus apparent that the *Barker* court fashioned a sort of *per se* rule; *i.e.,* a co-indictee is automatically an accomplice without more. Such a rule is quite at odds with the rule set forth in the supreme court opinions. Since the *Barker* court cited no authority for its position nor offered any logical explication for it, we believe that it is not in the mainstream of authority, particularly in view of the supreme court's reiteration in *Cobb* of the proper manner of applying the test. We therefore decline to follow *Barker* on this subject now or in the future.

■ In applying the test to Long in the instant case, we find that the trial court was correct in refusing the instruction. While it is true that he was originally charged along with the defendant and others, yet for reasons not apparent no preliminary hearing was held following the filing of the information in which to determine probable cause. The record does show that he entered a plea of guilty, but it was not to the original information; rather it was to an amended information of whose allegations we remain ignorant.

■ In examining the evidence in our case, we find no firm indica-

tion that Long knew anything of the planned activities of the defendant and Suggs beforehand. The conversation in the car during the ride to Danville, as recited above, is equivocal at best. It was not until after the thefts when the women placed the loot in the car did he become suspicious. To be accountable, he must have (1) the mental state required for the offense, and (2) before or during the offense aid in its commission. (Ill. Rev. Stat. 1981, ch. 38, par. 5—2.) It is insufficient that his aid comes afterwards.

In *Hrdlicka* the defendant was an election judge charged with fraudulently changing ballots. The alleged accomplice witness was also an election judge and did not know of the planned fraud until he saw it occur. He then made a false return which concealed the fraud. The court concluded that even if the witness were an accessory after the fact, he could not be indicted as a principal and thus the accomplice instruction need not be given. In *People v. Coddington* (1970), 123 Ill. App. 2d 351, 259 N.E.2d 382, the defendant was tried for murder. The court found that a witness who knew nothing of the murder until after the fact, but helped the defendant hide the body, was not an accessory. In *People v. Turner* (1980), 92 Ill. App. 3d 265, 415 N.E.2d 1114, the record showed that the witness' only connection to the case was his coincidental presence near the scene of the crime and his assisting the defendant to get medical treatment. The court concluded that the accomplice instruction was not required.

Under our view of the evidence in the instant case, Long was an accessory after the fact and thus the accomplice instruction was not required.

■■ ■ Defendant's second issue concerns the testimony of Long, set forth above, as to the conversations between defendant and Suggs after the offense. She maintains that the statements of a codefendant implicating the other are not admissible and constitute reversible error under the rule of *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620. She further cites *People v. Brown* (1972), 7 Ill. App. 3d 748, 289 N.E.2d 452, and *People v. Hopkins* (1970), 124 Ill. App. 2d 415, 259 N.E.2d 577. The statements were not a confession; therefore, they are not within the ambit of the *Bruton* rule.

In both *Brown* and *Hopkins* the statements were made by the co-defendant outside the presence of the defendant. That was not the case here. The full statement of the law is found in *Brown* as follows:

" '***[T]he law is well settled that confessions or admissions of a co-defendant, or those of a witness against an accused, are not admissible in evidence against such accused *unless made in*

*his presence and assented to by him.'* [Citation.]" (Emphasis added.) 7 Ill. App. 3d 748, 752, 289 N.E.2d 452, 455.

Such an assent may be manifested by silence (*People v. Norman* (1963), 28 Ill. 2d 77, 190 N.E.2d 819) or by an evasive, equivocal or unresponsive reply. (*People v. Wallace* (1982), 106 Ill. App. 3d 567, 435 N.E.2d 960.) We find such an assent in the instant case. The conversations were admissible.

■ Defendant lastly contends that the amount of restitution ordered as a condition of probation is erroneous and the State in its brief confesses error in this regard. The trial court ordered the defendant to make restitution in the amount of $2,867, the full retail value of the merchandise. The docket sheet reflects that the identical amount of restitution was imposed on Suggs as a part of her sentence of imprisonment. It will also be remembered that Meis' manager wrote to the trial court that $1,434 might be realized from the late sale of the merchandise.

Under the statute (Ill. Rev. Stat. 1981, ch. 38, par. 1005—5—6(b)) restitution is limited to the actual loss to the victim. This can only be determined after an actual sale has taken place. In any event, it cannot be twice $2,867.

Therefore the order of restitution is vacated and the cause is remanded to the circuit court of Vermilion County with directions to determine the actual loss to Meis Department Store and to apportion that loss between the defendant here and Suggs based upon what the court believes to be the relative culpability of those two.

The conviction of the defendant is affirmed; that portion of her sentence relating to restitution is vacated but the sentence otherwise affirmed; and the cause is remanded for further proceedings relating to restitution.

Affirmed in part, vacated in part, and remanded with directions.

MILLS and MILLER, JJ., concur.